## FIRST UNITED METHODIST CHURCH OF HYATTSVILLE, Plaintiff–Appellant,

v.

## UNITED STATES GYPSUM COMPANY, Defendant–Appellee.

No. 88–1612.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1989.

Decided Aug. 10, 1989.

Peter Tyler Enslein (Michelle A. Parfitt, James M. Hanny, Ashcraft & Gerel, Landover, Md., on brief), for plaintiff-appellant.

George Albert Nilson (John E. Griffith, Jr., John A. Singer, Piper & Marbury, Baltimore, Md., Thomas B. Kenworthy, Morgan, Lewis & Bockius, Philadelphia, Pa., on brief), for defendant-appellee.

Before RUSSELL and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

The First United Methodist Church of Hyattsville, Maryland ("First United") appeals the district court's grant of partial summary judgment in favor of United States Gypsum Company ("USG") based on a Maryland statute of repose, § 5–108 Md. Cts. & Jud.Proc.Code Ann. Specifically, the district court held that the repose period of § 5–108(a) was not preempted by the Comprehensive Environmental Response and Compensation Act of 1980 ("CERCLA"), 42 U.S.C. § 9658. Finding no error, we affirm.

## I.

In 1961, First United undertook construction of a new church building. At the direction of the building's architect, an asbestos-containing acoustical plaster, manufactured by USG, was applied to the building's ceilings. The church was consecrated on May 20, 1962, and has been in continuous use ever since. In 1969, a portion of the ceiling was replaced and asbestos-laden plaster was again used.

In July, 1985, First United became concerned over the possibility that asbestos materials may have been used in the construction of the church. In August, the presence of danger from the acoustical plaster was discovered and First United's Board of Trustees directed its removal from the building.

On June 15, 1988, First United brought suit against USG in Maryland state court alleging that the plaster posed a health hazard to those who frequently occupied the building. The Church sought to recover the cost of the removal of the plaster, an amount in excess of $225,000.00. USG removed the case to federal court without opposition.

First United's complaint advanced the state law theories of strict liability, negligence, breach of express and implied warranties, and fraud. On July 26, USG filed a motion for partial summary judgment on all claims arising from installation of the plaster which occurred before June 17, 1966, interposing Maryland's 20–year statute of repose as a complete defense. § 5–108(a) Md.Cts. & Jud.Proc.Code Ann. On October 13, the district court granted the motion and, finding no reason for just delays, entered a final judgment pursuant to Fed.R.Civ.P. 54(b) as to all pre–1966 claims. This appeal followed.

## II.

First United makes several arguments against the application of the statute of repose to its claims. The church's primary contention is that manufacturers are not in the class of persons protected by the statute. Alternatively, First United argues that even if the statute applies, USG's fraudulent concealment of the hazards of its plaster serve to toll the statute's running. Finally, the church argues that the time limits of § 5–108, as applied to its claims, have been preempted by CERCLA's § 9658, which establishes a uniform statute of limitations for all state law property damage actions based on the release of any hazardous substance into the environment. We address these arguments in turn.

The statute of repose reads in pertinent part:

§ 5–108. Injury to person or property occurring after completion of improvement to realty.

(a) *Injury occurring more than 20 years later.*—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

First United bases its narrow reading of this broad grant of immunity on a passage from the statute's legislative history that characterizes the statute as protecting "builders, contractors, landlords, and

realtors." *See Allentown Plaza Associates v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 342–44, 405 A.2d 326 (1979) (discussing the Revisor's Note to § 5–108). According to First United's argument, because USG as manufacturer of the plaster does not fit into one of these categories, it cannot have benefit of the statute. We do not agree.

■ While a statute's legislative history is often helpful in resolving ambiguity, one of the time-honored maxims of statutory construction is that when the language of a statute is clear, there is no need to rely on its legislative history. *Ex Parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949). Such is the case here. This statute unequivocally states that "no cause of action for damages accrues" after the 20–year time limit. And, it is completely silent as to any limitation on the class of persons it protects. To remove manufacturers from the ambit of § 5–108(a) as First United suggests, would be flatly inconsistent with this language's plain mandate. We are not alone in reaching this result.

In *J.H. Westerman Co. v. Fireman's Fund Ins. Co.*, 499 A.2d 116 (D.C.App. 1985), the District of Columbia court was forced to construe its nearly-identical statute of repose. In concluding that manufacturers were covered by the statute, the court reasoned that this language creates an immunity which turns on the defendant's connection to the improvement rather than on the type of service the defendant rendered or product it provided. *Id.* at 120. We find this reasoning persuasive and hold that § 5–108(a) works to insulate from liability manufacturers of products used in improvements made to real property.[1]

### III.

First United next contends that even if § 5–108(a) applies, USG's fraudulent concealment of the hazards of its plaster tolls the time limits of the statute.[2] We disagree.

The common law principle of equitable tolling of limitations periods has been codified in Maryland:

> If a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud. (An.Code 1957, art. 57, § 14; 1973, 1st Sp.Sess., Ch. 2, § 1)

§ 5–203 Md.Cts. & Jud.Proc.Ann.[3] As the language of this provision indicates, it is intended to give relief to victims of fraud by tolling the time of accrual of a cause of action for purposes of an applicable statute of limitations. *E.g., Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 703 (D.Md.1981). However, as the Maryland courts have repeatedly recognized, § 5–108 is a statute of repose, not a statute of limitations, and the time of accrual has been set by the Maryland General Assembly. *Hilliard & Bartko Joint Venture v. Fedco Systems, Inc.*, 309 Md. 147, 159, 522 A.2d 961 (1987); *Whiting–Turner*, 304 Md. at 350, 499 A.2d 178; *Allentown Plaza*, 43 Md.App. at 338 n. 2, 405 A.2d 326; *see also President and Directors, of Georgetown College v. Madden*, 505 F.Supp. 557, 571 (D.Md.1980). These are meaningful distinctions.

■ A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir.1987), *cert. de-*

---

1. *See also Whiting–Turner Contracting Co. v. Coupard,* 304 Md. 340, 349, 499 A.2d 178 (1985) (court in dicta commented that statute protects "suppliers of building materials").

2. Predictably, USG argues that First United's lack of due diligence, not USG's fraud, was the reason that this action was not timely filed. This, of course, is the quintessential question of fact in fraudulent concealment cases; however, our disposition of this issue obviates any need for its resolution.

3. The statute has recently been amended, however, the amendment is not applicable "to any actions arising from events occurring before July 1, 1987," and thus has no effect on the instant dispute. See § 2, Ch. 592, Acts 1987.

*nied*, —— U.S. ——, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988). A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. *Id.* Statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims. *Harig v. Johns–Manville Products Corp.*, 284 Md. 70, 75, 394 A.2d 299 (1978). Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists. *Whiting–Turner*, 304 Md. at 349–50, 499 A.2d 178. Thus, as a general rule, a statute of limitations is tolled by a defendant's fraudulent concealment of a plaintiff's injury because it would be inequitable to allow a defendant to use a statute intended as a device of fairness to perpetrate a fraud. Conversely, a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body. *Knox v. AC & S, Inc.*, 690 F.Supp. 752, 759 (S.D.Ind.1988).

■ These general principles counsel that we should not lightly disturb the Maryland General Assembly's judgment on the time limit set by § 5–108(a). We recognize, as the Maryland court has recognized, the unique public policy concerns embodied in the 20–year repose period:

> [The statute is] a response to the problems arising from the expansion of liability based on the defective and unsafe condition of an improvement to real property.... If a legislative body concludes that it will address the problem of expanded liability ... it must balance the interests of those potentially subject to liability, of those directly suffering injury, and of the public in having improve-

ments built safely and at a reasonable cost.

*Whiting–Turner*, 304 Md. at 349–50, 499 A.2d 178.

Further, it appears that a purpose of the statute was to inextricably tie the accrual of a property damage action to the date an improvement was placed into use precisely because tolling mechanisms, such as the one urged by First United, had expanded the liability of potential defendants. *Id.* at 349, 499 A.2d 178. Lastly, we note that had the Maryland General Assembly desired that § 5–203 apply to § 5–108, it could have expressly provided so as it has done in the medical malpractice arena. See § 5–109(f)(2) Md.Cts. & Jud.Code Ann. (amended in 1987 to show the applicability of § 5–203). In view of these considerations, it would be inappropriate for us to construe § 5–108(a) to provide for anything other than the 20–year repose period Maryland's lawmakers have chosen and consequently, we hold that § 5–203 does not operate to toll that period.[4]

## IV.

■ Lastly, we turn to First United's claim that § 5–108's repose period cannot preclude this action because it has been preempted by § 9658 of CERCLA. We cannot agree.

In relevant part § 9658 states:

(a) State Statutes of Limitations for Hazardous Substance Cases

(1) Exception to State Statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any *hazardous substance*, or pollutant or contaminant, *released into the environment* from a *facility*, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the

---

**4.** *See Glenn v. Morelos*, 79 Md.App. 90, 555 A.2d 1064 (1989) (court refused to recognize fraud

tolling exception to § 5–109 prior to its amendment).

federally required commencement date in lieu of the date specified in such State statute....

(b)(4) Federally Required Commencement Date

(a) In General

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) were caused or contributed to by the hazardous substance or pollutant or contaminant concerned....

(i) The terms used in this section shall have the same meanings as when used in subchapter I of this chapter. (emphasis added).

First United argues that because—(1) asbestos is unquestionably a hazardous substance, *see Knox,* 690 F.Supp. at 755; (2) the church building falls within the broad definition of a "facility" codified at 42 U.S.C. § 9601(9); and (3) the escape of asbestos fibers from USG's plaster falls within the scope of the phrase "release into the environment" as the terms "environment" and "release" are defined in 42 U.S.C. § 9601(8), (22) [5]—it must follow that the time limits of § 5–108(a), which extinguished this action even before the church knew that it existed, must give way to the "federally required commencement date" of 42 U.S.C. § 9658. This argument fails to persuade because the premise on which it rests—that CERCLA is intended to apply to recover costs incurred for removing asbestos products which are part of the structure of a building—is unsound.[6]

We acknowledge that CERCLA, as all remedial statutes, must be given a broad interpretation to effect its ameliorative goals. *United States v. Mottolo,* 605 F.Supp. 898, 902 (D.N.H.1985). We also recognize that the statute reaches far more than hazardous waste sites; in fact, it has been said that through CERCLA, "Congress sought to deal with every conceivable area where hazardous substances come to be located...." *State of N.Y. v. General Elec. Co.,* 592 F.Supp. 291, 296 (N.D.N.Y. 1984). However, to infer that Congress, by enacting CERCLA, intended to preempt state statutes of repose as applied to private asbestos-removal actions, is to stretch the statute far beyond its intended reach. We need look no further than the language of the statute to reach this conclusion.

In 42 U.S.C. § 9604(a)(3), Congress limited the President's authority to respond to the asbestos-removal problem:

The President shall not provide for a removal or remedial action under this section in response to a release or threat of release

.    .    .    .

(B) from products which are part of the structure of, and result in exposure within, residential buildings or business or community structures; ...[7]

First United argues that this limitation on the President's authority to act in no way limits the scope of § 9658 because cost recovery actions brought by private parties typically are not subject to the procedural requirements placed on similar actions brought by the government.[8] *See U.S.*

---

**5.** This proposition in First United's syllogism is by no means a given. *See Knox,* 690 F.Supp. at 757 (defining "release" in terms of "spills and disposals of wastes"); *Covalt v. Carey Canada Inc.,* 860 F.2d 1434 (7th Cir.1988) (§ 9658 does not preempt state law because interior of workplace is not "environment" for purposes of asbestosis suit based on work place exposure).

**6.** We emphasize that our holding is limited to the facts at hand, that is to claims for the cost of removing asbestos from the structure of a building, that was installed as part of that structure, and that creates a hazard only within that building. We express no opinion as to the validity

under CERCLA of any other genre of asbestos actions.

**7.** This limitation is subject to exception if, in the President's discretion, he determines that such a situation "constitutes a public health or environmental emergency and no other person with the authority and capability to respond to the emergency will do so in a timely manner." 42 U.S.C. § 9604(a)(4).

**8.** USG makes the counter-argument on this point that since First United has not pleaded a cause of action under CERCLA, it cannot avail itself of the preemptive effect of § 9658. See

*Conservation Chemical Co.,* 619 F.Supp. 162, 208–09 (W.D.Mo.1985) (§ 9604(c)(3) requirement of cooperative agreement before proceeding with a response not applicable to private cost recovery actions under § 9607); *Walls v. Waste Resource Corp.,* 823 F.2d 977, 979–81 (6th Cir.1987) (60 day notice requirement of § 9612(a) not applicable). We do not dispute this general rule; however, it would be anomalous indeed if Congress had seen fit to limit the President's authority to respond to a particular type of environmental hazard while placing no such limits on members of the general public. To resolve this ambiguity we turn to the provision's legislative history. There, it is made clear that § 9604(a)(3)(B) represents much more than a procedural limitation on the President's authority; instead, it is a substantive limitation of the breadth of CERCLA itself.

Section 9604(a)(3) originated as § 112(b) of Senate Bill 51, which was the Senate's version of the Superfund Amendments and Reauthorization Act of 1986. P.L. 99–499, 100 Stat. 1613 ("SARA"). *See Retirement Community Developers, Inc. v. Merine,* 713 F.Supp. 153 (D.Md.1989). The Senate Report accompanying this section stated, under a heading entitled Clarifying the program's scope, that:

> CERCLA response authorities are extremely broad, but there are nevertheless situations, some of which may be life-threatening, which are not within the law's scope. The Agency [Environmental Protection Agency] has encountered some difficulties, primarily political, in restraining CERCLA responses to the

scope of the law. For this reason, S. 51 proposes to make more explicit certain areas which the law does not cover.

> Specifically, S. 51 makes more clear the exclusion from remedial or removal action of a release or a threat of a release:
>
> ...—from products which are part of the structure of, and result in exposure within a facility....

> The Environmental Protection Agency has received requests to take removal or remedial action in situations where the contamination was from building materials used in the structure and was creating an indoor hazard. This section would clarify that such situations are not subject to remedial or removal action.

S.Rep. No. 11, 99th Cong., 1st Sess. 16–17 (1985) U.S.Code Cong. & Admin.News 1986, p. 2835. Although the compromise bill eventually passed as SARA was not Senate Bill 51, the exact language of § 112(b) as proposed by the Senate was adopted. H.R.Conf.Rep. No. 962, 99th Cong. 2nd Sess. 190 (1986) *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 3276, 3283. Thus, the Senate Report remains an *authoritative guide to interpreting this provision.*[9] In view of this clear expression of Congressional intent, we will not expand CERCLA to encompass asbestos-removal actions.[10]

Having drawn this conclusion, it follows naturally that § 9658 does not preempt § 5–108(a) as applied to asbestos-removal actions. Congress could not have intended

*Knox,* 690 F.Supp. at 757–58. Because we decide that CERCLA does not preempt § 5–108(a), we need not reach this issue.

**9.** First United contends that the Conference Report's characterization of § 112(b) supports its view that the section limits only the President's authority to act. While the Conference Committee's brief explanation of § 112(b) does not discuss the substantive limits the provision is intended to effect, the Committee expressly adopted the Senate's provision without stating that the Committee intended to modify its original meaning in any way. H.R.Conf.Rep. No. 962, 99th Cong. 2nd Sess. 190 (1986) *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276, 3283.

Consequently, we conclude that the Senate's explanation of § 112(b) remains viable.

**10.** *But see Prudential Ins. Co. of America, et al v. U.S. Gypsum, et al.,* 711 F.Supp. 1244 (D.N.J. 1989). In a CERCLA asbestos-removal action, the district court held that the plaintiffs did not state a CERCLA claim because the sale of asbestos building materials was not a "disposal" of a hazardous substance as defined by CERCLA. However, the court went on, in dicta, to comment that it believed that the limits of § 9604(a)(3) did not apply to private asbestos removal actions. With this dictum we respectfully disagree.

for § 9658 to preempt state law in an area which CERCLA's legislative history expressly places outside "the scope of the law." [11] To conclude otherwise would be contrary to the principles of comity which demand that in our federal system, state law not be preempted unless it is the "clear and manifest purpose of Congress." *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1107 (4th Cir.1989) (en banc) (quotation omitted).

■ In closing, we note that this interpretation of CERCLA fully comports with the most fundamental guide to statutory construction—common sense. To extend CERCLA's strict liability scheme to all past and present owners of buildings containing asbestos as well as to all persons who manufactured, transported, and installed asbestos products into buildings, would·be to shift literally billions of dollars of removal cost liability based on nothing more than an improvident interpretation of a statute that Congress never intended to apply in this context.[12] *Merine*, at 158. Certainly, if Congress had intended for CERCLA to address the monumental asbestos problem, it would have said so more directly when it passed SARA. In fact, the only mention of this problem in SARA's legislative history that either party has raised, or that this Court has found on its own, points to Con-

gress' intent to the contrary. While CERCLA is unquestionably a far-reaching remedial statute that must be interpreted with an eye toward this nation's environmental problems, it cannot reasonably be interpreted to encompass the asbestos-removal problem. Accordingly, we affirm the district court's holding that § 9658 does not preempt § 5–108(a).

## V.

In sum, we hold that § 5–108(a) protects manufacturers of goods used in improvements to real property and that the 20–year repose period of § 5–108(a) is not subject to the tolling provision of § 5–203. We also hold that because CERCLA does not authorize response cost recovery actions for removal of asbestos from the structure of a building, § 9658 of CERCLA does not preempt the repose period of § 5–108(a). Accordingly, we affirm the district court's ruling that all of First United's pre–1966 claims are barred.

*AFFIRMED.*

■

11. A report to Congress on the intended effect of § 9658 supports this reasoning:

The remedies discussed in this report are legal remedies for personal injury, environmental damages and reduction of property value resulting from the spills of hazardous substances and disposal of hazardous wastes *for which CERCLA provides cleanup and remedial activities.* (emphasis added). *Injuries and Damages from Hazardous Wastes— Analysis and Improvement of Legal Remedies;* A Report to Congress in Compliance with Section 301(e) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 97th Cong. 2d Sess.

12. It is for this reason, that Congress simply did not intend for CERCLA to remedy the asbestos-removal problem, that we decline to follow the reasoning of *Prudential, Knox* and *Covalt* in

rejecting First United's preemption argument. Instead of recognizing the fact that CERCLA is out of context in this situation, these courts rejected similar attempts to invoke the statute by construing CERCLA's key terms in a way to exclude asbestos-removal actions. *Covalt,* 860 F.2d at 1438–39 (defining "environment" to exclude the interior of a workplace); *Knox,* 690 F.Supp. at 756–57 (defining "release" in terms of "spills" or "disposal"); *Prudential,* at 1254–55 (defining "disposal" to exclude the sale of a product for consumer use). We find this analysis unsatisfactory because it runs the risk of unnecessarily restricting the scope of CERCLA merely to dispose of claims that the statute was never intended to encompass in the first place. It is far better to simply acknowledge the inapplicability of CERCLA to asbestos-removal claims than to restrict its operative terms.