Filed:  October 8, 1998

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 97-2215
(CA-96-918)

Milton E. Jones, Jr.,

Plaintiff - Appellant,

versus

Saxon Mortgage, Inc., et al,

Defendants - Appellees.

O R D E R

The court amends its opinion filed September 9, 1998, as follows:

On the cover sheet, section 1 -- the status is changed from UNPUBLISHED to PUBLISHED.

On page 1, section 6 -- the status line is changed to read "Affirmed by published per curiam opinion."

On page 2, section 1 -- the reference to use of unpublished opinions as precedent is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MILTON E. JONES, JR.,
Plaintiff-Appellant,

v.

No. 97-2215

SAXON MORTGAGE, INCORPORATED;
TEXAS COMMERCE BANK,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-96-918)

Argued: June 3, 1998

Decided: September 9, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henry Woods McLaughlin, III, CENTRAL VIRGINIA
LEGAL AID SOCIETY, INC., Richmond, Virginia, for Appellant.
Robert Dean Perrow, WILLIAMS, MULLEN, CHRISTIAN & DOB-
BINS, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Patrick
R. Hanes, WILLIAMS, MULLEN, CHRISTIAN & DOBBINS, P.C.,
Richmond, Virginia, for Appellees.

**OPINION**

PER CURIAM:

Milton Jones, Jr. initiated suit in federal court against Saxon Mortgage, Inc. ("Saxon") and Texas Commerce Bank ("TCB") on November 12, 1996. Jones's complaint was amended on February 10, 1997. In his amended complaint, Jones sought damages and injunctive relief from Saxon and TCB for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and for alleged violations of Virginia's fraud and usury laws. On August 5, 1997, the district court granted defendants' motion to dismiss and dismissed Jones's TILA claim, with prejudice, and his state fraud and usury claims, without prejudice. Jones appeals this order, contending that the district court erred in finding that he did not timely exercise his right to rescind under TILA. We affirm.

I.

The facts, as pled in the plaintiff's amended complaint, are as follows. In the spring or summer of 1992, Jones determined to obtain refinancing of a residential mortgage loan secured by a deed of trust on his residence at 7621 River Road in Fredericksburg, Spotsylvania County, Virginia. Jones engaged Mortgage and Equity Corporation ("Mortgage and Equity"), a licensed mortgage broker, to find a source of the money he needed. Jones's efforts to obtain a loan through Mortgage and Equity led to a delay of months, and Jones became concerned that he would enter default on his mortgages without the loan money. On October 23, 1992, Jones signed a note, closed on a loan obtained by Mortgage and Equity through Lenders Financial Corporation ("Lenders") and signed a deed of trust for a mortgage on the home to secure such note. However, Jones received less of the loan proceeds then he had been led to believe by Mortgage and Equity, largely because the closing costs for the loan were higher than Mortgage and Equity initially represented. Furthermore, the TILA docu-

2

ments given to Jones were defective because they under-disclosed a $300.00 processing fee paid to Mortgage and Equity, under-disclosed a $27.00 express mail charge ordered by the creditor and failed to include a notice explaining Jones's statutory right to rescind the transaction.

Mortgage and Equity and Lenders had an agreement by which Lenders agreed to pay a "kickback" to Mortgage and Equity in return for Mortgage and Equity steering loans to Lenders. Lenders, in turn, had an agreement with Saxon for Saxon to commit in advance to purchase loans to be made by Lenders. As part of the agreement, Saxon would pay a bonus to Lenders if Lenders's loan was at a higher interest rate than the agreed par rate on loans Saxon agreed in advance to purchase. Mortgage and Equity and Lenders knew that if Jones could be convinced to accept a loan at an interest rate higher than at par, Saxon would pay Lenders a bonus. Therefore, Mortgage and Equity and Lenders deliberately delayed arranging Jones's loan so that they could force Jones to accept a loan at a higher interest rate. According to Jones, he first became aware of the arrangements between Mortgage and Equity and Lenders, and Lenders and Saxon, in June of 1995.

In approximately November of 1992, Saxon paid Lenders for the loan, including a bonus, since the loan was above par. Lenders executed a document assigning the note and the deed of trust to Saxon. Saxon assigned the note and the deed of trust to TCB, as trustee.

Soon thereafter, Jones fell into arrears on the loan, and TCB, on instructions from Saxon, instituted foreclosure proceedings because Jones was in default. Having received the notice of foreclosure proceeding, Jones filed a pro se action against Mortgage and Equity and Lenders in the Circuit Court of Fairfax County, Virginia, on December 6, 1993. In October 1994, Jones's residence was sold at foreclosure to TCB. On February 10, 1995, Jones took a voluntary nonsuit in the action he initiated on December 6, 1993.

Despite the foreclosure sale, Jones continued to occupy the premises of the River Road property. To remove Jones from the property, TCB instituted, and prevailed in, an unlawful detainer action against Jones in the Circuit Court of Spotsylvania County, Virginia. Jones

3

unsuccessfully appealed the decision in the unlawful detainer action to the Supreme Court of Virginia and the Supreme Court of the United States. Jones was evicted from the residence in July 1996.

Meanwhile, on August 10, 1995, Jones filed a new suit in the Fairfax County Circuit Court. In that action, Jones named Saxon and TCB as defendants. Subsequently, on November 12, 1996, Jones moved for entry of a nonsuit, without prejudice. The Circuit Court granted that motion. That same day, Jones filed this civil action in federal court against Saxon and TCB, seeking damages and injunctive relief for alleged violations of TILA and for alleged violations of Virginia's fraud and usury laws. In this suit, Jones maintains that he is entitled to a declaratory judgment; that there has been a proper rescission under TILA; and, that he is entitled to a return of record ownership of the subject property. The district court dismissed Jones's TILA claim, with prejudice, and his state fraud and usury claims, without prejudice.

II.

We review the district court's decision to grant Saxon's and TCB's motion to dismiss de novo. Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997). We accept the factual allegations in the plaintiff's complaint and must construe those facts in the light most favorable to the plaintiff. Id. We may affirm the district court's dismissal only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

III.

At the district court, the parties agreed that the October 23, 1992 loan transaction was a consumer credit transaction covered by 15 U.S.C. §§ 1635, 1638 & 1640. The parties disagreed, however, whether Jones exercised, in a timely fashion, his absolute right to rescind, conferred by 15 U.S.C. § 1635(a). Jones's position was that his TILA action was timely filed. He reasoned that the time period for rescission under 15 U.S.C. § 1635 was tolled because of the doctrines of fraudulent concealment and equitable estoppel. The district court

4

then thoroughly discussed these doctrines and concluded that they are inapplicable in this case. Accordingly, the district court found that Jones's right to rescind under TILA had expired.

On appeal, Jones maintains that, contrary to the district court's holding, he did give timely notice of rescission under TILA by filing and serving his December 1993 pro se lawsuit seeking TILA rescission. In any event, Jones argues that the time period for rescission under TILA was tolled due to fraudulent concealment. We disagree.

IV.

TILA provides that, in the case of any consumer credit transaction in which a security interest will be retained on any property used as the consumer's principal dwelling, the consumer shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the material disclosure and rescission forms, whichever is later. 15 U.S.C. § 1635(a). If the required notice or material disclosures are not delivered, then § 1635(f) provides a time limit for the exercise of the right. 12 C.F.R. 226.23(a)(3) (1998). 15 U.S.C. § 1635(f) states, in pertinent part, as follows:

> Time limit for exercise of right
>
> (f) An obligor's right of rescission <u>shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first</u>, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . .. .

(Emphasis added.)

Congress "specifically designated the Federal Reserve Board and staff as the primary source of interpretation and application of truth-in-lending law." <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 567 (1980). <u>The Division of Consumer and Community Affairs of the Federal Reserve Board, Official Staff Interpretations</u> helps elucidate

5

the meaning of § 1635(a) & (f). The interpretation states, in pertinent part, as follows:

> When the creditor has failed to take the action necessary to start the three-business day rescission period running, the right to rescind automatically lapses on the occurrence of the earliest of the following three events:
>
> - The expiration of three years after consummation of the transaction.
>
> - Transfer of all the consumer's interest in the property . . . .
>
> A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind.

12 C.F.R. Pt. 226.23, Supp. I (1998).

In this case, Jones has stated sufficient facts that, if taken as true, entitle him to the application of § 1635(f) and the extended period of rescission. Thus, pursuant to § 1635(f), Jones's right of rescission could not have expired until three years after the date of consummation of the transaction or upon the sale of the property in question, whichever occurred first. In this case, a foreclosure sale occurred prior to the expiration of three years after the date of the consummation of the transaction; therefore, under the relevant statutes, Jones would have had to give proper notice of rescission prior to the foreclosure sale or his right of rescission would have expired on the date of the foreclosure sale.

Jones asserts that he exercised his right of rescission by filing and serving his pro se lawsuit on December 6, 1993. The filing of this suit and service of the suit occurred prior to the October 1994 foreclosure sale of the River Road property and prior to three years after the date of consummation of the October 1992 transaction.

In order to exercise a right to rescind, a borrower must notify the creditor of the rescission by mail, telegram, or other means of written

6

communication. 12 C.F.R. § 226.23(a)(2) (1998). Though the Fourth Circuit has not addressed the issue, certain courts have held that the filing of a lawsuit is sufficient "written communication" of the borrower's election to rescind. Taylor v. Domestic Remodeling, Inc., 97 F.3d 96, 100 (5th Cir. 1996); Elliot v. ITT Corp , 764 F. Supp. 102, 106 (N.D. Ill. 1991). This court need not decide whether the filing of a lawsuit is sufficient "written communication" of a borrower's election to rescind under TILA because even if we were to hold that a lawsuit may constitute sufficient notice, Jones's December 6, 1993 lawsuit does not constitute sufficient notice of rescission.

In Taylor v. Domestic Remodeling, Inc., 97 F.3d 96, 99 (5th Cir. 1996), defendant Green Tree argued that the plaintiffs failed to exercise their TILA right of rescission because they never submitted any proof of giving written notice. Prior to the three-year expiration period under 15 U.S.C. § 1635(f), however, the plaintiffs filed suit in state court specifically asserting, among other things, rescission under the provisions of TILA. Id. at 97. The Fifth Circuit agreed with the lower court's holding that the filing of the judicial complaint constituted written notice under TILA's regulations. Id. at 99.

Similarly, in Elliot v. ITT Corporation, 764 F. Supp. 102, 105-06 (N.D. Ill. 1991), the defendants argued that the plaintiff did not request rescission in writing within the applicable time period. The plaintiff claimed that her complaint constituted sufficient notice. Id. at 106. The plaintiff's complaint specifically requested that defendant ITT Financial be ordered to rescind the transaction. Id. Accordingly, the district court agreed that the plaintiff's complaint constituted sufficient written notice of rescission under TILA. Id.

The rule of law of these cases is clear -- the filing of a lawsuit can be sufficient written notice of rescission under TILA so long as the complaint seeks rescission. In sharp contrast to the Taylor and Elliot cases, Jones failed to ask for rescission in his December 6, 1993 complaint. Instead of seeking rescission, Jones prayed that the lien held by the current mortgager be rendered unenforceable, that attorney's fees and court costs be paid and that compensatory and punitive damages be awarded. The only reference to rescission throughout the whole complaint is in passing and in reference to one of Jones's alleged fraud claims.

7

The effect of a rescission of an agreement is to put the parties back in the same position they were in prior to the making of the contract. Invengineering, Inc. v. Foregger Co., 293 F.2d 201, 204 (3d Cir. 1961). On rescission of a contract, the contract is declared non-existent, and rescission places "the parties in the position they would have been in had the agreement never been executed . . . ." Id. Thus, a party seeking rescission of a contract must "disgorge the fruits of the bargain." Woodling v. Garrett Corp., 813 F.2d 543, 561 (2d Cir. 1987).

Thus, it is evident that when Jones sought in his 1993 suit to hold the lien on his residence unenforceable, he sought something quite distinct from rescission. If the plaintiff was successful in his action filed on December 6, 1993, the relief he sought would have merely resulted in the lien on his residence being rendered unenforceable. Jones would not have been required to pay back any of the loan proceeds. Rescission, on the other hand, would have returned the parties to their pre-contractual state. Thus, under rescission, Jones would have to return the loan proceeds, and the security interest in Jones's residence would vanish. Because an action for rescission is distinct from an action asking that a lien on a residence be held unenforceable, this court finds that, even if the filing of a lawsuit can constitute sufficient written notice of rescission, Jones's December 6, 1993 lawsuit did not constitute sufficient notice because he never requested rescission in that action.

Jones's amended complaint in this case fails to allege any other statement that could be construed as written notice of rescission prior to the October 1994 foreclosure sale. Therefore, because the foreclosure sale in this case occurred prior to three years after the date of consummation of the transaction, Jones's right to rescind expired, pursuant to 15 U.S.C. § 1635(f), upon the foreclosure sale of his property.

V.

Next, Jones contends that even if his 1993 lawsuit did not constitute sufficient notice of his intention to rescind, and there was no notice of rescission prior to the foreclosure, the expiration period in

15 U.S.C. § 1635(f) should be tolled by fraudulent concealment. Again, we disagree.

All the parties to this lawsuit concede that § 1635(f) is a statute of repose and not a statute of limitation. This distinction is key to this case. A statute of limitations "is a procedural device that operates as a defense to limit the remedy available from an existing cause of action." First United Methodist Church of Hyattsville v. United States Gypsum Co., 882 F.2d 862, 865 (4th Cir. 1989), cert. denied, 493 U.S. 1070 (1990). One of the purposes of a statute of limitations is to encourage prompt resolution of disputes and to provide to defendants a mechanism to dispose of stale claims. Id. at 866. In this regard, "the terms of a typical statute of limitations provide that a cause of action may or must be brought within a certain period of time." Beach v. Ocwen Federal Bank, 118 S. Ct. 1408, 1412 (1998).

In contrast, a statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time. First United Methodist Church of Hyattsville, 882 F.2d at 865. Statutes of repose are motivated by "considerations of the economic best interest of the public as a whole and are . . . based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." Id.

Given these differences between statutes of limitations and statutes of repose, it is understandable that a statute of limitations is tolled by a defendant's fraudulent concealment. To disallow tolling when a defendant has fraudulently concealed an injury would permit a defendant to use a device, that was created out of considerations of fairness, inequitably. Id. Similarly, it is easy to understand why a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason. Id. To permit tolling of a statute of repose would upset the economic best interests of the public as a whole.

In Beach v. Ocwen Federal Bank, 118 S. Ct. 1408, 1411-12 (1998), the United States Supreme Court indicated that 15 U.S.C. § 1635(f) was not a statute of limitations, noting that § 1635(f) provides that the right of rescission shall expire at the end of the time period. Id. at

9

1412. Though not a statute of limitations, § 1635(f) is, as the parties concede, a statue of repose. By its terms, § 1635(f) mirrors a typical statute of repose in that it "precludes a right of action after a specified period of time rather than" providing that a cause of action must be brought within a certain period of time after the cause of action accrued. Beach v. Ocwen Federal Bank, 692 So.2d 146, 152 (Fla. 1997), aff'd, 118 S. Ct. 1408 (1998).

Because § 1635(f) is a statute of repose, the time period stated therein is typically not tolled for any reason. First United Methodist Church of Hyattsville v. United States Gypsum Co., 882 F.2d 862, 865 (4th Cir. 1989), cert. denied, 493 U.S. 1070 (1990). Even so, to permit tolling under § 1635(f) to allow a party to rescind after a foreclosure sale would be unwise. First, after a foreclosure sale, rescission is often impossible because the real estate has been purchased by an innocent third party at the foreclosure sale. Consequently, the creditor would not be able to return the property and the contracting parties would not be able to return to their pre-contractual state by rescission unless the innocent third party was divested of his or her interest in the property.

Moreover, allowing tolling under § 1635(f) and permitting a party to rescind after a foreclosure sale would create uncertainty in any chain of title of real estate purchased from a foreclosure sale. Real estate purchased from a foreclosure sale would be less marketable if purchasers could somehow later be divested of title. Similarly, title to real estate purchased from a foreclosure sale would be clouded.

Accordingly, we hold that § 1635(f) is an absolute time limit and cannot be tolled to allow a party to rescind after a foreclosure sale. For all these reasons, the order of the district court is affirmed.

AFFIRMED

10