NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1493
_____

PAULA WILLIAMS,
Appellant

v.

WELLS FARGO HOME MORTGAGE, INC.;
PREMIER EVENTS, INC., d/b/a TARGET HOME REMODELING;
H.E.M. CORPORATION


On Appeal from the United States District Court
for the Eastern District of  Pennsylvania
District Court  No. 2:06-CV-03681
District Judge: The Honorable Legrome D. Davis

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 25, 2011

Before: McKEE, *Chief Judge*, and SMITH, *Circuit Judges,*
and STEARNS, *District Judge*[*]

(Filed:   February 8, 2011)
_____

OPINION
_____


SMITH, *Circuit Judge*.

---

[*]   The Honorable Richard G. Stearns, United States District Judge for the United States District Court of Massachusetts, sitting by designation.

Paula Williams appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of Wells Fargo Home Mortgage, Inc.[*] For the reasons set forth below, we will affirm.

I.

Williams, who is disabled and blind, paid off the mortgage on her Philadelphia home in 1997. In the fall of 2002, Target Home Remodeling solicited Williams' business by delivering a flyer about its services to her home. She contacted Target, and its owner, Buddy Beegal, who inspected her home and provided her with an estimate of $25,000 for the repairs Williams sought. According to Williams, Beegal told her "he would handle everything." Approximately a month later, even though Williams had not taken any action to obtain financing, Beegal advised her that the financing for the repairs had been approved.

H.E.M., a mortgage broker licensed in Pennsylvania, submitted Williams' completed loan application to Wells Fargo. The application included social security award letters, an appraisal, a title search, and a letter from Williams stating that the "purpose of the loan was to use the cash for home improvements." The submissions did not include any agreement providing for home improvements and Wells Fargo did not know that Williams had already received an estimate from Target.

---

[*] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We exercise final order jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting summary judgment. *Shook v. Avaya, Inc.*, 625 F.3d 69, 72 (3d Cir. 2010). We also conduct de novo review of a district court's legal conclusions. *Id.*

On November 14, 2002, Williams executed a balloon note, secured by her home, promising to pay Wells Fargo $28,000 at a yearly interest rate of 9.375. Williams received only $13,820.83 from the $28,000 mortgage proceeds. The other proceeds were distributed to satisfy delinquent real estate taxes, an overdue gas bill, and a bill to a vendor, as well as the costs associated with the loan. On November 19, 2002, Williams received from the settlement agent checks in the amount of $6,915.41 and $6,915.42.

The day after the loan proceeds were distributed, Beegal completed a Home Improvement Agreement for Installation and Service, which Williams executed. The Agreement differed from the initial $25,000 estimate as it provided for a payment in cash of $13,820.83, with the down payment and the final payment being the exact amounts of the two checks disbursed to Williams by the settlement agent.

In April of 2003, Williams' mortgage payment was $20 short and Wells Fargo (inexplicably) refused to accept the insufficient amount. By the end of September of 2003, Wells Fargo had obtained a default judgment in its favor in a mortgage foreclosure action filed in the Philadelphia Court of Common Pleas.

Thereafter, Williams engaged in multiple legal actions in an effort to stay in her home, initiating civil actions in the Philadelphia Court of Common Pleas and petitioning, on several occasions, for protection under the Bankruptcy Code. On November 22, 2004 Williams' counsel sent a letter to Wells Fargo seeking to rescind the mortgage transaction and to exercise her right to do so under the Truth in Lending Act (TILA), 15 U.S.C. § 1635(a). Wells Fargo did not respond.

3

On August 22, 2006, Williams filed a complaint in the District Court against Wells Fargo and others. An amended complaint filed the same day alleged that Wells Fargo had failed to comply with the TILA and the Home Equity Protection Act (HOEPA), 15 U.S.C. § 1641, that this failure entitled her to rescind the loan transaction, and that Wells Fargo was liable for statutory damages. In addition, Williams alleged that Target had breached its contract and that Wells Fargo was liable for the breach because it had failed to provide notice of a limitation of liability under 73 P.S. § 500-401 of the Pennsylvania Home Improvement Finance Act (HIFA), and the HOEPA.

The District Court granted Wells Fargo's renewed motion for summary judgment. It concluded that Williams' claims under the TILA for damages and for rescission were time-barred by the respective one- and three-year statute of limitations. It also determined that the loan transaction was not subject to the requirements of HIFA and HOEPA. This timely appeal followed.

II.

The TILA was "designed to strengthen the national economy by enhancing the informed use of credit. It requires creditors to accurately and meaningfully disclose all credit terms." *Reithman v. Berry*, 287 F.3d 274, 279 (3d Cir. 2002) (citing 15 U.S.C. § 1601(a)). To that end, the TILA requires the lender to provide "material disclosures" to the borrower. *See* 15 U.S.C. §§ 1601-1602, 1639. The TILA provides that in a consumer credit transaction in which a "security interest . . . is . . . acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following

4

the consummation of the transaction or the delivery of the information and rescission forms[.]" 15 U.S.C. § 1635(a); *see also* 12 C.F.R. § 226.23(a)(1) (hereafter referred to as Regulation Z). If a creditor fails to provide the required notice of the right to rescind or the TILA's material disclosures, the right to rescind exists for three years after the consummation of the transaction. Reg. Z, § 226.23(a)(3). Section 1635(f) states:

> An obligor's right of rescission shall *expire* three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor[.]

15 U.S.C. § 1635(f) (emphasis added).

Here, the transaction was consummated on November 14, 2002. The notice to rescind was mailed on November 22, 2004, a little more than two years after the transaction was consummated. The civil action to enforce the right to rescind, however, was not filed until August 22, 2006, more than nine months after the three-year period expired. Wells Fargo moved for summary judgment, claiming that Williams' action for rescission was time-barred pursuant to 15 U.S.C. § 1635(f).

The District Court agreed. Williams contends that her TILA claim should not have been dismissed because the three-year statutory period only applies "to when rescission must be effected [by notice], not when a suit to enforce that right to rescission is exercised." Alternatively, Williams contends that this statutory three-year period should be subject to equitable tolling.

We have yet to address whether the three-year period in § 1635(f) pertains to the time within which either a notice of rescission must be tendered or an action for

5

rescission must be commenced.[†]  The district and bankruptcy courts within this circuit have reached differing results.

We conclude that the Supreme Court's analysis in *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), is dispositive.  There, the Supreme Court granted certiorari to "determine whether . . . the statutory right of rescission provided by § 1635 may be revived as an affirmative defense after its expiration under § 1635(f)."  *Id.* at 415.  It concluded that the plain language of the statutory provision answered the question, reasoning that

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well.  The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period.  It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.

*Id.* at 416-17 (citations omitted).  Accordingly, the Court held that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."  *Id.* at 412.  "Congress's manifest intent," the Court concluded, was "that the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run."  *Id.* at 419.

---

[†]  We declared in *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 902 (3d Cir. 1990), and *In re Community Bank of Northern Virginia*, 418 F.3d 277, 305 (3d Cir. 2005) (*Community Bank I*), that an action for rescission must be initiated within three years of the date of consummation of the transaction.  Neither case, however, considered the viability of a rescission action commenced after the statutory three-year period.  Thus, neither case is controlling.

6

By explaining that § 1635(f) "limits more than the time for bringing a suit," *id.* at 417, and "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run," *id.* at 419, the Court implicitly recognized that any claim for rescission under § 1635 must be filed within the three-year period. It may be that an obligor may invoke the right to rescission by mere notice. Mere invocation without more, however, will not preserve the right beyond the three-year period. Rather, consistent with § 1635(f), a legal action to enforce the right must be filed within the three-year period or the right will be "completely extinguishe[d]." *Id.* at 412. Thus, we conclude that the District Court correctly determined that Williams' action for rescission was time-barred.

Alternatively, Williams contends that the three-year period is subject to equitable tolling. We disagree. In *In re Community Bank of Northern Virginia*, 622 F.3d 275 (3d Cir. 2010) (*Community Bank II*), we noted that we had "incorrectly suggested [in *Community Bank I*] that the three-year limitations period for claims for rescission under TILA was a statute of limitation 'subject to equitable tolling.'" *Id.* at 301 n.18 (quoting *Cmty Bank I*, 418 F.3d at 305). Furthermore, we noted that the *Beach* Court had held that § 1635(f) "is not a statute of limitations, but a statute of repose, *i.e.*, one 'governing the life of the underlying right.'" *Id.* (quoting *Beach*, 523 U.S. at 417). *See also Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (stating that "§ 1635(f) is a statute of repose"); *Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 326 (5th Cir. 1998) (noting parties' concession that § 1635(f) is a statute of repose). Because the right ceases to exist once a statute of repose has run, we conclude that equitable tolling cannot resurrect

7

Williams' right to rescind the credit transaction. *See Jones*, 537 F.3d at 327 (reasoning that it is "easy to understand why a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason. To permit tolling of a statute of repose would upset the economic best interests of the public as a whole"). *See also In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199-200 (3d Cir. 2007) (noting difference between a statute of limitations and a statute of repose).

## III.

Williams also contends that the District Court erred by concluding that the loan transaction was not subject to HIFA and therefore not subject to HOEPA. In her view, the loan transaction qualified as a "home improvement installment contract" under HIFA, which rendered it subject to HOEPA's requirements. Wells Fargo, however, asserts that the loan was exempt from the HIFA definition of "home improvement installment contract."

> HIFA defines "home improvement installment contract" as
>
> an agreement covering a home improvement installment sale, whether contained in one or more documents, together with any accompanying promissory note or other evidence of indebtedness, to be performed in this Commonwealth pursuant to which the buyer promises to pay in installments all or any part of the time sale price or prices of goods and services, or services. The meaning of the term *does not include* such an agreement, if . . . (v) the loan is contracted for *or* obtained directly by the retail buyer from the lending institution, person or corporation[.]

73 P.S. § 500-102(10) (emphasis added). Because H.E.M., the mortgage broker, obtained the loan for Williams, she asserts that the exception is inapplicable.

In interpreting this Pennsylvania statute, "our task is to discern the intent of the Legislature, and the foremost indication of legislative intent is the plain language of the statute." *In re D.L.H.*, 2 A.3d 505, 513 (Pa. 2010). The use of the disjunctive "or" establishes that the exception also applies if Williams "contracted for" the loan. The record confirms that she executed the note and the mortgage. She admitted as much during her deposition. If we embraced Williams' interpretation of this statutory exception, we would be reading out of the statute the words "contracted for." "Such an interpretation would defy the axiom of statutory construction that 'whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.'" *Commonwealth. v. Lassiter,* 722 A.2d 657, 661 (Pa. 1998) (quoting *In re Emp. of Student Serv.*, 432 A.2d 189, 195 (Pa. 1981)).

In short, because Williams "contracted for" the loan with Wells Fargo, the exception in the definition of "home improvement installment contract" applies. As a result, the loan transaction was not subject to HIFA's requirements. Because it is not subject to HIFA, the dependent HOEPA claim also fails.

For the reasons set forth above, we will affirm the judgment of the District Court.

9