# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2008

Charles R. Fulbruge III
Clerk

No. 06-60708

KENESHA L. BARNES, ON BEHALF OF THE ESTATE OF SHERRIE
BARNES, DECEASED

                              Plaintiff-Appellee-Cross-Appellant

v.

KOPPERS INC.; BEAZER EAST INC., FORMERLY KNOWN AS BEAZER
MATERIALS AND SERVICES

                              Defendants-Appellants-Cross-Appellants

Appeals from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

EDITH H. JONES:

Kenesha Barnes ("Barnes") filed suit against Koppers, Inc. ("Koppers") and
Beazer East, Inc. ("Beazer"), alleging that the companies' operations of a wood
treatment plant in Grenada, Mississippi, released environmental contamination
that caused her mother's death from breast cancer. Koppers and Beazer moved
unsuccessfully for summary judgment on the ground that Barnes's claims were
barred by Mississippi's general three-year statute of limitations. MISS. CODE
ANN. § 15-1-49. After a three-week trial, the jury found Koppers and Beazer
liable on Barnes's negligence claim. Because the state limitations statute bars
Barnes's claim and CERCLA's provision tolling limitations, 42 U.S.C. § 9658,
does not preempt the state statute in this case, we REVERSE.

## I.  BACKGROUND

Koppers and Beazer have at various times owned and operated a wood treatment facility ("the Plant"), which treats railroad crossties and utility poles with creosote, creosote mixtures, and pentachlorophenol.

On May 18, 2003, Kenesha Barnes filed a wrongful death suit against Koppers and Beazer, alleging that her mother developed breast cancer because she was exposed to dioxins and polycyclic aromatic hydrocarbons ("PAHs") emitted from the Plant.  Kenesha Barnes's mother, Sherrie Barnes, was diagnosed with breast cancer on June 13, 1997, and died from the disease on September 7, 1998.  She had lived throughout her life in a home adjacent to the Plant.

Before trial, the district court entered an order granting the companies' motion for summary judgment on various state tort claims, but it rejected their argument that Barnes's remaining claims, for conspiracy and negligence, were barred by the applicable three-year statute of limitations.  The jury found Koppers and Beazer liable solely on Barnes's negligence claim and  awarded Barnes $845,000 in compensatory damages.  The district court reduced the award to $785,000 and ordered the parties to bear their own costs.  This appeal followed.

## II.  DISCUSSION

Apart from the court's rejection of a statute of limitations bar, Beazer challenges numerous rulings by the district court, including its decisions concerning the admission of expert testimony and its unprecedented order transferring any future trials in the case to another division within the Northern District of Mississippi. Koppers joins Beazer's appeal and also contends that the district court erred in holding it liable, without any evidentiary inquiry, as a successor-in-interest to Beazer.  Barnes cross-appeals the district court's order to bear her own court costs.  Many of these issues raise troubling questions

about the handling of this case, which is the first to be tried in an "inventory" of several hundred similar suits against Beazer and Koppers pending on the district court's docket. We cannot reach most of these issues, however, because Barnes's claim is barred by limitations.

A.

Most Mississippi tort claims are governed by a three-year statute of limitations. See MISS. CODE ANN. § 15-1-49. The key issue here is when the limitations period commenced. The parties agree that § 15-1-49(2), the "latent discovery rule," applies in this case. Subsection (2) states:

> In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."

MISS. CODE ANN. § 15-1-49(2) (emphasis added). Beazer and Koppers contend that the statute of limitations commenced when Barnes's mother was diagnosed with breast cancer, and the claims are barred. More than five years elapsed between Sherrie Barnes's diagnosis in 1997 and the filing of this lawsuit in 2003; more than four years elapsed between Sherrie Barnes's death and the initiation of the lawsuit. Barnes contends, however, that the suit was timely filed within a year from the date that her attorney's investigation first uncovered the alleged link between Plant emissions and her mother's cancer.

The district court agreed with Barnes and held that the cause of action did not accrue until Barnes knew of both the injury and its cause. This court reviews de novo the district court's determination of state law. Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991).

We conclude that the district court erred in adopting Barnes's statutory interpretation. The firmest rebuke to this interpretation is the language of the statute itself, which refers only to discovery of the injury, not to discovery of its

cause. The latent discovery statute differs markedly from Mississippi's limitations provision governing medical malpractice suits, which commences only when the negligent act "shall or with reasonable diligence might have been first known or discovered. . . ."[1] That the medical malpractice provision refers to discovery of the "neglect" as opposed to the "injury" evidences the legislature's ability to craft a discovery rule like that advocated by Barnes, and reinforces the limited scope of the latent discovery provision.

The Mississippi Supreme Court explicitly acknowledged the injury-based provision in Owens-Illinois, Inc. v. Edwards, and rejected, albeit in dicta, the proposition that a plaintiff must discover the cause of her injury before a cause of action accrues. 573 So. 2d 704, 709 (Miss. 1990). In Edwards, the plaintiffs filed suit against the defendants for injuries allegedly attributable to asbestos exposure. The Mississippi Supreme Court stated:

> The cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease. . . . Though the cause of the injury and the causative relationship between the injury and the injurious act or product may also be ascertainable on this date, these factors are not applicable under § 15-1-49(2), as they are under MISS. CODE ANN. § 15-1-36.

Id. (emphasis added).

Barnes cites subsequent decisions by the Mississippi Supreme Court, but none is inconsistent with the court's specific statement in Edwards. In Schiro v. American Tobacco Co., 611 So. 2d 962, 965 (Miss. 1992), the court explained that a cause of action based upon a latent disease accrues when the injured party becomes aware of her injury — in that case, when the plaintiff was diagnosed with lung cancer. The plaintiff's mere belief that she might have

---

[1] MISS. CODE ANN. § 15-1-36 (" . . . no claim in tort may be brought against a licensed physician . . . unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered. . . .").

cancer was insufficient to start the statute of limitations. Id. The court noted that:

> [t]he contention that Schiro should have brought suit . . . after discovery of the mass also fails. It could be argued that at this point, Schiro was aware of her injury. However, as aforementioned, Schiro did not actually know that she had cancer, an injury connected with smoking.

Id. Although the court observed that cancer is "an injury connected with smoking," it repeatedly stated that the plaintiff's cause of action accrued when she was diagnosed with cancer. Id. The court did not emphasize or even discuss the time at which the plaintiff learned her cancer was attributable to smoking. Schiro is consistent with Edwards; the final phrase quoted above does not announce a different discovery rule. Barnes's reliance on Sarris v. Smith, 782 So. 2d 721 (Miss. 2001) is also misplaced. In Sarris, the Mississippi Supreme Court held, ". . . the statute of limitations can be tolled until a plaintiff gains actual knowledge of the defendant's negligent conduct even if that knowledge is not gained until years after the death that is the basis for the suit." Id. at 724 (applying MISS. CODE. ANN. § 15-1-36). Sarris, however, is a medical malpractice case interpreting § 15-1-36, the medical malpractice statute of limitations. See Sutherland v. Estate of Ritter, 959 So. 2d 1004, 1008-09 (Miss. 2007). Thus, the Mississippi Supreme Court has not departed from its statement in Edwards.

Cases decided by the Mississippi Court of Appeals also do not undermine the clear statement of the Edwards court. Barnes relies on May v. Pulmosan Safety Equipment Corp., but whether the plaintiff had knowledge of causation was not there at issue. 948 So. 2d 483, 485 (Miss. App. 2007) (citing Sarris, 782 So. 2d at 724). May's citation to Sarris in any event suggests that the court conflated the medical malpractice statute of limitations, § 15-1-36, with the personal injury statute of limitations, § 15-1-49. Likewise, the intermediate

court's confusing divided decision in Cannon v. Mid-South X-Ray Co., 738 So. 2d 274 (Miss. App. 1999), seems to turn more on the date of diagnosis than on the plaintiff's discovery of the cause of her injury. Moreover, because neither May nor Cannon offers any analysis of the above-quoted statement from Edwards, this court is especially hesitant to attribute to them a holding that seems irreconcilable with Edwards.

Finally, this court's decision in Kemp v. G.D. Searle & Co. does not require a different result. 103 F.3d 405 (5th Cir. 1991). In Kemp, the plaintiff argued that use of an intrauterine device caused her to develop pelvic inflammatory disease ("PID") and to become infertile. Id. at 407. Though her claim for PID was barred under § 15-1-49, the plaintiff argued that her infertility gave rise to a second cause of action. Id. This court disagreed, holding that "Kemp's injury was the PID and that the statute of limitations began to run when she knew of her injury and its cause, not when she later discovered all of the consequences and complications of the PID." Id. at 410. This language referencing "cause" was dicta because plaintiff's knowledge of causation was not at issue.[2]

In sum, the cases cited by the district court and by Barnes do not overcome the plain language of the statute itself, which references only the injury, and the Mississippi Supreme Court's directive in Edwards. Under § 15-1-49, a cause of action accrues when the plaintiff has knowledge of the injury, not knowledge of the injury and its cause. Barnes's claims are barred under § 15-1-49.

## B.

As an alternative to her state law argument, in one paragraph of her brief comprising two sentences, Barnes makes a federal preemption claim based on § 309 of the Comprehensive Environmental Response, Compensation, and

---

[2] Our interpretation of § 15-1-49 is consistent with a more analogous, though non-precedential, decision in Wilbanks v. A.H. Robins Co., Inc., No. 98-60393, 1999 WL 800019, at *1 (5th Cir. Sept. 15, 1999) (unpublished).

Liability Act ("CERCLA"), 42 U.S.C. § 9658. Barnes also cited this provision to the district court, which had no need to consider it. Despite the brevity of her briefing, the point is not so insufficiently raised as to be waived. See FED. R. APP. P. 28(a)(9); Atwood v. Union Carbide Corp., 847 F.2d 278, 280 (5th Cir. 1988) ("We liberally construe briefs in determining issues presented for review; however, issues not raised at all are waived.").

Section 9658 is a tolling provision that applies to some state-law tort actions stemming from exposure to hazardous substances. Where applicable, § 9658 prevents a state limitations period from commencing until a plaintiff knows or should know of both her injury and its cause. The relevant portion of § 9658 states:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1). The "federally required commencement date" is

> the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

42 U.S.C. § 9658(b)(4). Barnes contends that § 9658 preempts state law in all toxic tort actions, including this one. Under this construction, Barnes submits her action was timely filed.

Barnes's contention necessarily embraces the preemptive scope of § 9658 and its potential application in her case. The preemptive reach of § 9658 is not clear. Congress enacted § 9658 as part of a bundle of amendments to CERCLA known as the Superfund Amendments and Reauthorization Act of 1986

7

("SARA"). PUB. L. NO. 99-499, 100 STAT. 1613. Section 9658 was a compromise provision; it initially appeared only in the House version of the bill, and was adopted in conference with little discussion on the legislative record. Since its passage, the Congressional intent behind the proper scope of § 9658 preemption has been the subject of much debate among the federal courts.[3] Barnes cites one case, but her briefing ignores the debate.

As the party asserting federal preemption of state law, however, Barnes bears the burden of persuasion. AT&T Corp. v. Pub. Util. Comm'n of Texas, 373 F.3d 641, 645 (5th Cir. 2004); Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 255, 104 S. Ct. 615, 625 (1984). Under well-settled law, Barnes must persuade the court that Congress intended § 9658, read within the entire context of CERCLA, fully to preempt state tolling provisions, and she must overcome the presumption against preemption on this subject involving historic state police powers. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996). No doubt Congress intended to preempt less favorable state law tolling provisions for certain toxic tort cases. The question raised here is the intended scope of such preemption. If the extent of Congress's preemptive intent is unclear, the presumption favors a finding of limited preemption. Id.

The terms used in § 9658 to describe the scope of preemption are those used throughout CERCLA. Each of these — "hazardous substance," "release," "facility" — has a specific statutory definition.[4] The CERCLA definitions are

---

[3] For a reading of § 9658 as broadly preemptive, see Kowalski v. Goodyear Tire & Rubber Co., 841 F. Supp. 104, 108 (W.D.N.Y. 1994); see also O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1149 (9th Cir. 2002) ("Section 9658 applies to actions that assert state law claims without an accompanying CERCLA claim."). For a more limited construction, see Covalt v. Carey Canada, Inc., 860 F.2d 1434, 1437-38 (7th Cir. 1988); First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 866-68 (4th Cir. 1989); and Becton v. Rhone-Poulenc, Inc., 706 So. 2d 1134, 1137-41 (Ala. 1997).

[4] See, e.g., 42 U.S.C. § 9601(9), (14), (22).

extremely broad, but even CERCLA has exclusions from its coverage.[5] Moreover, the statute's regime of notification, remediation and shared cleanup liability has been characterized by this court as pertaining to "abandoned," not "existing" sites. See Cox v. City of Dallas, 256 F.3d 281, 296 n.25 (citing O'Reilly, et al., RCRA and Superfund § 2.02, at 2-3 (stating that "CERCLA applies to abandoned sites, and RCRA deals with today's generators")). Thus, it might be argued that § 9658 is confined to claims arising from hazardous waste sites where CERCLA enforcement actions have been taken or pursued, whether by government or private parties. The contrary position, that § 9658 is all-preemptive of less generous state law toxic tort tolling provisions, nevertheless has support. O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1149 (9th Cir. 2002) ("Section 9658 applies to actions that assert state law claims without an accompanying CERCLA claim."); Tucker v. S. Wood Piedmont Co., 28 F.3d 1089, 1091 (11th Cir. 1994) (assuming, without discussion, that § 9658 applied to preempt the state statute of limitations at issue). But this position ignores the statutory exemptions from CERCLA and the definitions themselves, and runs afoul of the principle that terms included in a statute must have consistent meanings throughout. See Sorenson v. Sec'y of Treasury, 475 U.S. 851, 860, 106 S. Ct. 1600, 1606 (1986); see also Sierra Club v. Seaboard Farms, Inc., 387 F.3d 1167, 1175 (10th Cir. 2004).

In a related vein, the Seventh Circuit analyzed § 9658 in relation to the claim of a worker who was attempting to sue both his employer and a provider of asbestos to which he had been exposed many years earlier in the workplace.

---

[5] For example, the definition of "hazardous substance" expressly excludes petroleum and several forms of natural gas. 42 U.S.C. § 9601(14). Likewise, structural asbestos has been held to be outside the scope of CERCLA. U.S. Gypsum, 882 F.2d at 866-68; 42 U.S.C. § 9604(a)(3)(B). Moreover, the liability provisions of CERCLA § 9607 disallow a contribution action stemming from any "federally permitted release," which is defined as a discharge pursuant to a permit issued under any of a variety of federal environmental laws. 42 U.S.C. §§ 9607(j); 9601(10).

Covalt v. Carey Canada, Inc., 860 F.2d 1434, 1435 (7th Cir. 1988). Despite the facial breadth of the tolling provision, the court's interpretation centered on the CERCLA definition of "release" as excluding "exposure to persons solely within a workplace . . . ." Id. at 1436 (citing 42 U.S.C. § 9601(22)). The court concluded that the imbedded limitation prevented § 9658 from extending the state statute of repose against both potential defendants. Covalt hardly carries the day for Koppers and Beazer here, where arguably the "release" of the toxic chemicals in soot from the Plant might be covered by CERCLA, but the Covalt court points out that the CERCLA has defined limits: "It does not regulate emissions from existing sources (the subject of the Clean Air and Clean Water Acts) or the levels of toxic substances permitted at work . . . ." Id. at 1437. And it notes that the cost of giving the provision the broadest possible meaning would "preempt wide sweeps of state law — something we do not lightly attribute to Congress."[6]

The ambiguous scope of § 9658 suggests limited preemption, but it also authorizes our resort to legislative history to clarify the intent of Congress at the time of enactment. See Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433, 440 (5th Cir. 2000). The history here is unusually helpful, inasmuch as the conference report accompanying the final version of SARA explains that § 9658 was drafted in response to a study mandated by § 301(e) of CERCLA. 132 Cong. Rec. H9032-04 (1986); 42 U.S.C. § 9651(e). That study (the "301(e) Report"), authored by a panel of twelve distinguished attorneys, was intended to identify potential areas for reform in state and federal law.[7] Commenting that in some

---

[6] Id. at 1439. See also Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449, 125 S. Ct. 1788, 1801 (2005). "(In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest'" (internal citation omitted)).

[7] Injuries and Damages from Hazardous Wastes—Analysis and Improvement of Legal Remedies: A Report to Congress in Compliance with Section 301(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (P.L. 96-510) by the "Superfund Section 301(e) Study Group," Arnold & Porter SARA Comm. Print 1982 (22B).

states limitations periods might commence before a plaintiff became aware of both his injury and its cause, the panel recommended, among other things, "discovery rules" to facilitate recovery in appropriate cases. § 301(e) Report, at 43. Throughout its report, however, the 301(e) panel emphasized that it was not proposing general toxic tort reform. Rather, it was concerned with exposure to hazardous waste that was already governed by the existing provisions of CERCLA:

> CERCLA is not a regulatory statute in the same sense as the Clean Air and Clean Water Acts, or as the Toxic Substances Control Act—i.e., it does not provide for the regulation of hazardous emissions, or with the regulation of the production or distribution of toxic or hazardous substances.

§ 301(e) Report, at 42. In summary, "the remedies discussed in this report are legal remedies for personal injury . . . resulting from the spills of hazardous substances and disposal of hazardous wastes for which CERCLA provides cleanup and remedial activities." Id. (emphasis added).

The 301(e) report was limited to activities already falling under the ambit of CERCLA. Congress adopted the 301(e) panel's work in § 9658. 132 Cong. Rec. H9032-04 ("This section addresses the problem identified in the 301(e) study."). Congress did not indicate in the legislative history that it intended to exceed the scope of CERCLA or the 301(e) Report. Rather, the history shows that § 9658, as a part of CERCLA, was intended to operate within its bounds. Covalt, 860 F.2d at 1438; U.S. Gypsum, 882 F.2d at 869.[8]

---

[8] See also Becton, 706 So. 2d at 1137 (compiling cases and concluding that "[m]ost federal courts have limited the application of § 9658 to situations where an underlying CERCLA claim has been made or could exist based on the presence of hazardous waste — where there is an underlying claim dealing with, or cause of action providing for, cleanup and remedial activities."); Knox, 690 F. Supp. 752, 757 (S.D. Ind. 1988) (explaining that § 9658 applies in "situations where there is an underlying CERCLA action providing for cleanup and remedial activities").

We are obliged to raise questions about the preemptive scope of § 9658 because of Barnes's global assertion, and they may be useful in future discussions of the subject. In the end, however, we will assume that the provision potentially supersedes Mississippi Code § 15-1-49. Even so, because § 9658 is imbued with the terminology of CERCLA, and because we are to presume, absent manifest Congressional intent, that Congress did not intend broad preemption in the traditional field of state tort remedies, we conclude that § 9658 operates only where the conditions for CERCLA cleanup are satisfied. This does not mean, as Beazer asserts, that a CERCLA suit must be pending or that the plaintiff's state law injury claims have to be filed in conjunction with a CERCLA suit. See O'Connor v. Boeing, 311 F.3d 1139, 1148-49 (9th Cir. 2002). The statutory text furnishes no such limitation. But the plaintiff must, as the proponent of a defense to the state statute of limitation, carry her burden to prove that she is entitled to the benefit of the discovery rule. See O'Connor, 311 F.3d at 1150. She must prove that her claims arose from a "release" of "hazardous substances" into the "environment," as well as other case-specific preconditions establishing that the defendant's "facility" falls within CERCLA. In this case, § 9658 was raised by Barnes as an afterthought, and she overbroadly construes its preemptive scope. As a result, she failed to offer evidence or briefing explaining how the Plant's soot emissions give rise to CERCLA coverage through the statutory terms used in § 9658. Lacking such necessary proof, we are constrained to reject Barnes's plea for tolling the state statute, § 15-1-49.

## III. CONCLUSION

Because Barnes's claim is barred by the Mississippi statute of limitations, her case cannot proceed. We REVERSE the judgment of the district court in favor of Barnes, and RENDER judgment in favor of the Defendants.