# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2012

No. 12-60027

Lyle W. Cayce
Clerk

TELTECH SYSTEMS, INCORPORATED; WONDERLAND RENTALS, INCORPORATED; MEIR COHEN,

Plaintiffs - Appellees

v.

PHIL BRYANT, in His Official Capacity as Governor of the State of Mississippi; JIM HOOD, in His Official Capacity as Attorney General of the State of Mississippi,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, SMITH, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Defendants-Appellants Phil Bryant, Governor of Mississippi, and Jim Hood, its Attorney General (Defendants), contest a summary judgment's holding the Mississippi Caller ID Anti-Spoofing Act, MISS. CODE ANN. § 77-3-805, violates the Commerce Clause, U.S. CONST. art. I § 8, cl. 3. Also at issue is whether the Act: (1) is conflict-preempted by the Truth in Caller ID Act of 2009, 47 U.S.C. § 227(e); and (2) comports with the First Amendment. The judgment is upheld on a preemption basis. AFFIRMED.

No. 12-60027

## I.

"Spoofing" is misrepresenting the originating telephone caller's identification (caller ID) to the call recipient. The practice has both improper and legitimate applications.

In early 2010, Mississippi enacted the Caller ID Anti-Spoofing Act (ASA). Consistent with ASA violations' being subject to penalties and remedies under Title 75, Chapter 24 (Regulation of Business for Consumer Protection), MISS. CODE ANN. § 77-3-809(2), Defendants contend the Act is to prevent fraudulent and criminal activity and to protect consumers. Under it,

> [a] person may not enter or cause to be entered false information into a telephone caller identification system with the intent to *deceive, defraud or mislead* the recipient of a call [and a] person may not place a call knowing that false information was entered into the telephone caller identification system with the intent to *deceive, defraud or mislead* the recipient of the call.

MISS. CODE ANN. § 77-3-805 (emphasis added). ASA violators commit a misdemeanor, and are subject to a fine and imprisonment. MISS. CODE ANN. § 77-3-809(1).

Later that year, the Telephone Consumer Protection Act of 1991 (TCPA) (codified at 47 U.S.C. § 227) was amended by the Truth in Caller ID Act of 2009 (TCIA) (codified entirely within 47 U.S.C. § 227(e)). TCIA provides:

> It shall be unlawful for any person within the United States, in connection with any telecommunications service or [Internet protocol]-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the *intent to defraud, cause harm, or wrongfully obtain anything of value* . . . .

47 U.S.C. § 227(e)(1) (emphasis added). TCIA violators are subject to civil and criminal liability. 47 U.S.C. § 227(e)(5). Jointly, TCIA and TCPA provide a

No. 12-60027

private right of action, grant enforcement powers in both federal and state governments, grant intervenor rights to the Federal Communications Commission (FCC), and vest district courts with exclusive jurisdiction over claims under 47 U.S.C. § 227(e)(1).  47 U.S.C. § 227(e)(6), (g)(1)-(3).

ASA is more restrictive than TCIA.  On the one hand, spoofing done with "intent to defraud, cause harm, or wrongfully obtain anything of value" (harmful spoofing), in violation of TCIA, is also violative of ASA.  On the other hand, spoofing done without such intent, but "with the intent to deceive . . . or mislead the recipient of the call" (non-harmful spoofing), violates only ASA.

Plaintiffs-Appellees New Jersey-based Teltech Systems, Inc. (of which plaintiff Meir Cohen is president), and Michigan-based Wonderland Rentals, Inc. (Plaintiffs), provide nationwide third-party spoofing services to individuals and entities.  Teltech offers its customers the SpoofCard, which operates like a long-distance calling card and gives its holder the ability to manipulate the caller ID displayed to the called party.  Wonderland uses spoofing to conduct "mystery shopping", by which Wonderland representatives, posing as customers, interact with its clients' customer-service departments to conduct quality control and gauge performance.

In district court, Plaintiffs challenged ASA on three bases:  (1) conflict preemption; (2) the dormant Commerce Clause; and (3) the First Amendment.  *Teltech Sys., Inc. v. Barbour*, 866 F. Supp. 2d 571 (S.D. Miss. 2011).  Following cross-motions for summary judgment, the district court, applying *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), held ASA violated the dormant Commerce Clause because it had the "practical effect of regulating commerce occurring wholly outside [Mississippi]".  *Teltech Sys.*, 866 F. Supp. 2d at 577 (internal citation and quotation marks omitted).  On the other hand, the court held no conflict preemption because:  compliance with both statutes was not physically impossible; and Plaintiffs failed to show ASA constituted an obstacle to the

accomplishment of a federal objective. *Id.* at 574-75. The First Amendment claim was not reached. *Id.* at 577 n.5.

## II.

A summary judgment is reviewed *de novo. E.g., In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a). Pursuant to the cross-motions for summary judgment, there is no genuine dispute of material fact; at hand are only questions of law, which include statutory construction.

At issue are whether: TCIA preempts ASA; and ASA violates the dormant Commerce Clause and the First Amendment. In that regard, Plaintiffs press the challenges to ASA they raised in district court. Having received a favorable judgment, and not seeking to alter or modify it, Plaintiffs were not required to cross-appeal, even though they contest the district court's no-preemption ruling. *Cf. Kelly v. Foti*, 77 F.3d 819, 822 (5th Cir. 1996) (reversal of plaintiff-appellee's summary-judgment denial an impermissible alteration or modification of judgment when plaintiff-appellee did not cross-appeal). In other words, having prevailed in district court on their dormant Commerce Clause challenge, Plaintiffs were not required to cross-appeal to urge here the preemption and First Amendment claims they raised there, because ASA's invalidation on an alternative theory would not "enlarge the rights of the appellee or diminish the rights of the appellant". *Borrego Springs Bank, N.A. v. Skuna River Lumber, LLC*, 564 F.3d 353, 356 (5th Cir. 2009). No authority need be cited for our being able to review the issues raised here by Plaintiffs in the light of their having raised them in district court.

It goes without saying that constitutional questions should be avoided if there are independent "ground[s] upon which the case may be disposed of". *Ashwander v. TVA*, 297 U.S. 288, 347 (1936). Because we hold ASA is conflict-

No. 12-60027

preempted by TCIA, we need not consider its validity under the dormant Commerce Clause or First Amendment. Along that line, the district court's Commerce Clause holding is, of course, vacated by this opinion.

"The preemptive effect of a federal statute is a question of law" and is reviewed *de novo*. *Franks Inv. Co. v. Union Pac. R.R.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc). The burden of persuasion rests on the party asserting preemption. *AT&T Corp. v. Pub. Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004).

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding". U.S. CONST. art. VI, cl. 2. The Supremacy Clause mandates displacement of state law when (1) Congress intends expressly to do so; or (2) Congress intends implicitly to do so through a pervasive federal regulatory scheme, or the state law conflicts with the federal law or its purposes. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990). Under any preemption theory, "Congress' intent is the ultimate touchstone". *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 803 (5th Cir. 2011) (internal citations and quotations omitted).

Our inquiry begins with the presumption that federal statutes do not supersede States' historic police powers, unless Congress clearly and manifestly intended to do so. *Id.* at 803-04. "This [pre]sumption applies with particular force when Congress legislates in a field traditionally occupied by state law", but with "less force when [legislating] in a field with a history of significant federal presence". *Id.* at 804 (internal citations and quotations omitted).

Although interstate telecommunications has been an area of "significant federal presence", ASA is grounded instead in consumer protection, an area traditionally reserved to the States. *E.g.*, *Castro v. Collecto, Inc.*, 634 F.3d 779, 784-85 (5th Cir. 2011) (Federal Communications Act permits States to regulate

5

No. 12-60027

aspects of commercial mobile services, including consumer protection); *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990) (compelling evidence required to show Congressional intent to preempt state consumer protection laws). Therefore, here the presumption remains in favor of no preemption. *Castro*, 634 F.3d at 784.

## A.

At oral argument, both sides were directed to submit supplemental briefing for an issue raised by neither: the effect of 47 U.S.C. § 227(e)(9), which exempts TCIA from TCPA's savings clause. Although Plaintiffs do not explicitly contend express preemption, we construe their response and supplemental briefs as challenging ASA under both express and implied preemption.

"Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citation omitted). Congress did not state expressly its intent for TCIA to preempt state law. It did, however, exempt TCIA from TCPA's savings clause. TCIA's concluding subsection states:

> Notwithstanding any other provision of [§ 227], subsection (f) shall not apply to [§ 227(e)] or to the regulations under [§ 227(e)].

47 U.S.C. § 227(e)(9). Section 227(f), titled "Effect on State Law", contains TCPA's savings clause and states in relevant part:

> [N]othing in [§ 227] or in the regulations prescribed under [§ 227] shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits –
>
>> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
>> (B) the use of automatic telephone dialing systems;

No. 12-60027

> (C) the use of artificial or prerecorded voice
> messages; or
> (D) the making of telephone solicitations.

47 U.S.C. § 227(f)(1). As part of the originally-enacted TCPA, this subsection largely pertains to telemarketing practices.

Our court has never interpreted TCPA's savings clause, but other courts have disagreed over its preemptive effect. *Compare Van Bergen v. Minnesota*, 59 F.3d 1541, 1547-48 (8th Cir. 1995) (no express preemption, but only an expression of non-preemptive effect); *United States v. Dish Network, LLC*, 667 F. Supp. 2d 952, 963-64 (C.D. Ill. 2009) ("the [savings clause] does not preempt state laws that . . . impose more restrictive intrastate requirements . . . or [ ] prohibit any . . . [interstate] conduct set forth in subclauses (A) through (D)"); *with Patriotic Veterans, Inc. v. Ind., ex rel. Zoeller*, 821 F. Supp. 2d 1074, 1077 (S.D. Ind. 2011) (in providing "a universe of state laws that are *not* preempted, this provision, by implication, suggests that Congress intended for state laws outside of that defined universe to be preempted" (emphasis in original)); *Chamber of Commerce of the United States v. Lockyer*, No. 2:05-CV-2257MCEKJM, 2006 WL 462482, at *8 (E.D. Cal. Feb. 27, 2006) (the savings clause preempts state laws restricting or prohibiting certain interstate telecommunications).

The FCC has also weighed in. Mindful of States' historic power to regulate intrastate calls, the FCC postulated Congress intended to provide a "uniform regulatory scheme" under which telemarketers would not be subject to inconsistent regulations. 18 F.C.C.R. 14014, 14064 (2003). The FCC conceded the extent of States' authority under TCPA's savings clause was ambiguous, but concluded "more restrictive state efforts to regulate interstate calling would almost certainly conflict with [its] rules" by disrupting that uniform scheme, and by imposing significant compliance costs on those subject to TCPA. *Id.* at 14063-

No. 12-60027

64. The deference owed to this interpretation, however, remains an "academic question". *E.g.*, *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 20 (2007) (not deciding whether agency entitled to *Chevron*-deference when stating its regulations preempt state law).

At bottom, 47 U.S.C. § 227(e)(9)'s exempting TCIA from the savings clause in § 227(f) is arguably unclear, both in purpose and in effect, concerning spoofing. Because, as discussed *infra*, TCIA impliedly preempts ASA, express preemption *vel non* need not be resolved.

## B.

Preemption may be inferred, *inter alia*, "if there is an actual conflict between state and federal law". *Altria Grp.*, 555 U.S. at 76-77 (internal citations omitted). A state law is conflict-preempted when it operates as an obstacle to the accomplishment of a federal objective, *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983), or when federal law authorizes expressly an activity prohibited by state law, *Wells Fargo Bank of Tex. NA v. James*, 321 F.3d 488, 491 n.3 (5th Cir. 2003).

Defendants contend ASA operates harmoniously with TCIA, imposing no obstacle to the latter's inherent federal objectives. Citing legislative history, they identify Congress' intent to render harmful spoofing unlawful, while exempting law enforcement, intelligence agencies, and court orders from TCIA's prohibitions. 47 U.S.C. § 227(e)(7) ("This subsection does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States."). This contention fails, however, to explain how these exemptions confer authority upon States to restrict non-harmful spoofing. Moreover, it does not respond to the crux of Plaintiffs' claim: the protection of non-harmful spoofing is a Congressionally-mandated federal objective.

8

No. 12-60027

Noting TCIA plainly prohibits harmful spoofing, Plaintiffs maintain Congress authorized – indeed, intended to protect – non-harmful spoofing. Fortifying this contention, they rely on legislative history to demonstrate Congress differentiated between harmful and non-harmful spoofing: by limiting 47 U.S.C. § 227(e)(1)'s language to prohibit only the former, Congress bestowed federal-objective status upon the latter. They urge, therefore, that ASA's prohibition on non-harmful spoofing frustrates the accomplishment of this federal objective.

To be sure, ASA's proscription of non-harmful spoofing at least conflicts obliquely with TCIA's proscription of only harmful spoofing. Therefore, the dispositive inquiry is whether TCIA serves a minimum regulatory function, upon which Defendants may enact stricter anti-spoofing laws; or, whether TCIA serves a maximum regulatory function, by sheltering non-harmful spoofing from additional state regulation. Of course, we look first to the text of the statute. Given the earlier-discussed, arguably unclear purpose and effect of TCIA's exemption from TCPA's savings clause, the legislative history informs this inquiry. *E.g.*, *Barnes ex rel. Estate of Barnes v. Koppers, Inc.*, 534 F.3d 357 (5th Cir. 2008) (resorting to legislative history to clarify congressional intent where statute's preemptive scope unclear).

In a Senate report, Senator Rockefeller noted spoofing's legitimate importance for domestic-violence victims, or for consumers who wish to provide a temporary call-back number that differs from their actual telephone number. S. Rep. 111-96 (2009). Accordingly, the federal effort to curtail spoofing focused on persons intending to cause harm through fraud or criminal mischief. *Id.*

Both chambers of Congress drafted bills addressing spoofing: containing language similar to the ASA, H.R. 1258 would have rendered unlawful spoofing done with "intent to defraud or *deceive*" (emphasis added); S. 30 contained the more narrow, as-enacted language, proscribing "the intent to defraud, cause

9

harm, or wrongfully obtain anything of value". Although both bills passed their respective chambers, the Senate did not pass H.R. 1258, while the House passed S. 30 without amendment.

In passing S. 30, House members stated expressly their intent to protect non-harmful spoofing. 156 Cong. Rec. H8378-01 (2010). Congressman Stearns stated: "We drafted . . . carefully to ensure that we only prohibit [spoofing] intending to do harm . . . . [T]his bill protects those legitimate [spoofing] practices". *Id.* Congressman Engel echoed this intent: "[W]e don't want some legitimate reasons to use this technology to be outlawed. So it is only outlawed when the intent is to defraud, cause harm, or wrongfully obtain anything of value". *Id.* Moreover, the FCC incorporated this intent by reference in its implementing order. 26 F.C.C.R. 9114, 9117, 9130 (2011) ("As Congress recognized . . . not all instances of [caller ID] manipulation are harmful, and some may be beneficial . . . . Congress intended to balance carefully the drawbacks of malicious caller ID spoofing against the benefits provided by legitimate caller ID spoofing".).

The measured language of 47 U.S.C. § 227(e)(1) reflects this calibration. Congress could have broadened TCIA's proscriptive reach by inserting the term "misleading", or words to that effect. But it did not, and because the expression of some connotes the exclusion of others ("*expressio unius est exclusio alterius*"), Congress apparently regarded some forms of spoofing worthy of protection from more restrictive state regulation. *E.g.*, *Saxon v. Ga. Ass'n of Indep. Ins. Agents, Inc.*, 399 F.2d 1010, 1013 (5th Cir. 1968) (incidental powers expressly granted under certain conditions implicitly divested absent those conditions).

*Arizona v. United States*, 132 S. Ct. 2492 (2012), is illustrative. The Immigration Reform and Control Act of 1986, 8 U.S.C. §§ 1101, *et seq.* (IRCA), subjects employers who hire unauthorized aliens to criminal and civil sanctions, but imposes no such penalties on the hired unauthorized aliens. 8 U.S.C. § 1324a;

No. 12-60027

*Arizona,* 132 S. Ct. at 2504. An Arizona statute, the Support Our Law Enforcement and Safe Neighborhoods Act, ARIZ. REV. STAT. ANN. §§ 11-1051, *et seq.*, went further, making it a misdemeanor for unauthorized aliens to apply for, or solicit, work. ARIZ. REV. STAT. ANN. § 13-2928(C). Although the Arizona statute advanced the same goal as IRCA – preventing hiring unauthorized aliens – the Court held the Arizona statute's enforcement scheme conflicted with the federal regulatory system. *Arizona*, 132 S. Ct. at 2505. Examining the "text, structure, and [legislative] history of IRCA", the Court held the Arizona statute posed an obstacle to "the careful balance struck by Congress with respect to unauthorized employment of aliens". *Id.*

TCIA's "text, structure, and [legislative] history", as discussed *supra*, persuades us that ASA similarly upsets Congress' considered regulatory choices. *Id.* The constrained language of 47 U.S.C. § 227(e)(1) is compelling evidence of Congress' intent to protect non-harmful spoofing. *E.g.*, *P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988) ("Where . . . federal scheme intentionally leaves a portion of the regulated field without controls, *then* the pre-emptive inference can be drawn – not from federal inaction alone, but from inaction joined with action". (emphasis in original)). TCIA's legislative history removes any lingering doubt.

In the light of 47 U.S.C. § 227(e)(1)'s carefully-drafted language and legislative history, and in spite of the presumption against preemption that attaches to a State's exercise of its police power, there is an inherent federal objective in TCIA to protect non-harmful spoofing. ASA's proscription of non-harmful spoofing – spoofing done without "intent to defraud, cause harm, or

No. 12-60027

wrongfully obtain anything of value" – frustrates this federal objective and is, therefore, conflict-preempted.

## III.

For the foregoing reasons, and although on a basis different from that employed by the district court, the judgment is AFFIRMED.