**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2480

NEAL BLANKENSHIP; EMMA GAY BLANKENSHIP,

Plaintiffs - Appellants,

v.

CONSOLIDATION COAL COMPANY, a Delaware Corporation; ISLAND CREEK COAL COMPANY, a Delaware Corporation,

Defendants - Appellees,

and

CONSOL ENERGY, INC., a Delaware Corporation,

Defendant.

No. 15-2482

DIANNA L. GRAHAM; ANNA PEARL RATLIFF; IRA GORDON RATLIFF; CONNIE RATLIFF,

Plaintiffs - Appellants,

v.

CONSOLIDATION COAL COMPANY, a Delaware Corporation; ISLAND CREEK COAL COMPANY, a Delaware Corporation,

Defendants - Appellees,

and

CNX GAS COMPANY, LLC, a Virginia Limited Liability Company; CONSOL ENERGY, INC., a Delaware Corporation,

                Defendants.

-------------------

Appeals from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:14-cv-00048-JPJ-PMS; 1:13-cv-00011-JPJ-PMS)

-------------------

Argued:  December 8, 2016                      Decided:  March 9, 2017

-------------------

Before NIEMEYER, KING, and AGEE, Circuit Judges.

-------------------

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge King and Judge Agee joined.

-------------------

**ARGUED:** April Dawn Ferrebee, MASTERS LAW FIRM, LC, Charleston, West Virginia; Terrence Shea Cook, T. SHEA COOK, PC, Richlands, Virginia, for Appellants. James F. Neale, Jonathan Todd Blank, MCGUIREWOODS LLP, Charlottesville, Virginia, for Appellees. **ON BRIEF:** Marvin W. Masters, MASTERS LAW FIRM, LC, Charleston, West Virginia, for Appellants.  Larissa LPC Sneathern, Charlottesville, Virginia, Tennille J. Checkovich, Lena L. Busscher,  MCGUIREWOODS LLP, Richmond, Virginia; David Grant Altizer, Mandy Varney French, ALTIZER, WALK AND WHITE PLLC, for Appellees.

-------------------

2

NIEMEYER, Circuit Judge:

In March 1994, Consolidation Coal Company obtained the necessary government permit to "dewater" its Buchanan Mine, an underground coal mine in Buchanan County, Virginia. It then began to pump the water from its mine into the nearby Beatrice Mine, an exhausted coal mine owned by Island Creek Coal Company, which authorized Consolidation Coal to do so. Consolidation Coal completed its dewatering operation in 2003.

More than 15 years after Consolidation Coal began its dewatering operation, the plaintiffs, who own property over portions of the Beatrice Mine, commenced two different but parallel actions in 2011 and 2013 against Consolidation Coal, Island Creek Coal, and others, asserting state causes of action for trespass, negligence, nuisance, and related torts. The complaints alleged that, by filling the Beatrice Mine with water, Consolidation Coal damaged the plaintiffs' property interests in the exhausted Beatrice Mine and unjustly enriched itself. They demanded hundreds of millions of dollars in damages, punitive damages, and injunctive relief.

The district court granted the defendants' motions for summary judgment on the ground that Virginia's statutes of limitations governed and barred the plaintiffs' claims and that the plaintiffs could not, as they argued, benefit from the discovery rule provided by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675.

Challenging the district court's rulings, the plaintiffs mainly contend on appeal that CERCLA's discovery rule preempts Virginia's statutes of limitations and, as a result,

3

Virginia's statutes of limitations began to run when the plaintiffs knew or should have known of their alleged injury. 42 U.S.C. § 9658. The plaintiffs assert that, because they did not learn of their claims until late 2010 or early 2011, their actions filed in 2011 and 2013 were timely.

For the reasons that follow, we affirm the judgments of the district court.

I

Because Consolidation Coal's mining operations in the Buchanan Mine were being hampered by the accumulation of water, Consolidation Coal sought to pump the water from the mine into the nearby Beatrice Mine, which had been exhausted in 1972. To undertake this "dewatering" operation, it reached an agreement with Island Creek Coal, which owned the Beatrice Mine. It also applied for a revision to its existing mining permit from the Virginia Department of Mines, Minerals and Energy, a division of the Department of Mined Land Reclamation, and gave formal notice to the U.S. Department of Labor's Mine Safety and Health Administration. After submitting its application, it published four notices of its application in a local newspaper and filed the actual application for public view at the local courthouse, as required by law.

The notice that Consolidation Coal published informed the public of its intent "to Establish a New Mine Dewatering Pump System for Coal Surface Mining/NPDES Permit"; advised the public that the application was on file for public view at the Buchanan County Courthouse; and invited "any person whose interests [were] or [might] be adversely affected . . . [to] submit written comments or objections concerning the

4

proposed change." The application on public file at the Buchanan County Courthouse further described the intent of the proposed operation to "transfer . . . mine water from the Buchanan Mine to the Beatrice Mine via overland pipe" and provided the details of where the operation was to take place.

The Virginia Department of Mines, Minerals and Energy approved Consolidation Coal's application in March 1994, and Consolidation Coal then began pumping water from the Buchanan Mine into the Beatrice Mine, completing its activities in 2003.

During 2005 and 2006, numerous local newspaper articles reported the continuing protests by local citizens over Consolidation Coal's mining activities and repeatedly referred to Consolidation Coal's dewatering operation.

In April 2013, about 19 years after Consolidation Coal began dewatering the Buchanan Mine, Neal Blankenship and Emma Gay Blankenship, who own property over a portion of the Beatrice Mine, commenced an action in state court against Consolidation Coal, Island Creek Coal, and others. After voluntarily dismissing that action without prejudice, they commenced this action in federal court on July 29, 2014, invoking diversity jurisdiction and alleging state law claims of trespass, unjust enrichment, negligence, nuisance, and waste. They demanded over $500 million in damages, $350,000 per instance of trespass in punitive damages, and injunctive relief.

Dianna Graham, Anna Pearl Ratliff, Ira Gordon Ratliff, and Connie Ratliff, also property owners over a portion of Beatrice Mine, commenced a separate action in state court against Consolidation Coal, Island Creek Coal, and others, on May 31, 2011. After voluntarily dismissing that action without prejudice, they commenced this action in

5

federal court on January 30, 2013, again invoking diversity jurisdiction and alleging trespass, unjust enrichment, negligence, nuisance, waste, and, in addition, conversion. They demanded over $300 million in damages, punitive damages of $350,000 for each trespass, and injunctive relief.

In two orders dated October 26, 2015, the district court granted Consolidation Coal's and Island Creek Coal's motions for summary judgment on the ground that the plaintiffs' claims were barred by Virginia's statutes of limitations of three years for the unjust enrichment claim and five years for the remaining claims. Relying on *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862 (4th Cir. 1989), the court rejected the plaintiffs' argument that the state statutes of limitations had been preempted by CERCLA, which provides a discovery rule in some circumstances for when state statutes of limitations begin to run. Alternatively, the court concluded that even if CERCLA preempted the state statutes of limitations, the CERCLA discovery rule would not aid the plaintiffs because they reasonably should have known about their claims more than five years before they filed their actions.

From the district court's judgments dated October 26, 2015, the plaintiffs in each action appealed. By order dated December 10, 2015, we consolidated the two appeals.

II

The district court held that the plaintiffs' state law causes of action were barred by Virginia's statutes of limitations. It concluded that, under Virginia law, those statutes of limitations began to run when the plaintiffs' claims accrued and that their claims accrued

6

when their injuries occurred. The court explained that, because Consolidation Coal began pumping water from the Buchanan Mine into the Beatrice Mine under the plaintiffs' property in 1994, the plaintiffs' alleged injuries occurred more than five years before the plaintiffs commenced their actions in 2011 and 2013 and therefore the actions were barred, as the longest applicable limitation period was five years, *see* Va. Code Ann. § 8.01-243(B), while the limitation period for the plaintiffs' unjust enrichment claims was three years, *see id.* § 8.01-246(4).

Virginia law provides that, for "every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run *from the date the injury is sustained* in the case of . . . damage to property." Va. Code Ann. § 8.01-230 (emphasis added). And this has been construed to mean that the limitation period begins whenever "any injury, however slight is caused . . . , even though additional or more severe injury or damage may be subsequently sustained." *St. George v. Pariser*, 484 S.E.2d 888, 890 (Va. 1997). Unlike some jurisdictions, Virginia does not have a discovery rule that causes statutes of limitations to begin running when plaintiffs knew or should have known of their injury. *See Comptroller of Va. ex rel. Va. Military Inst. v. King*, 232 S.E.2d 895, 900 (Va. 1977). Thus, the plaintiffs' lawsuits first filed in state court in 2011 and 2013 were clearly barred

by Virginia's statutes of limitations of three years for unjust enrichment and five years for the plaintiffs' other causes of action.[*]

The plaintiffs do not take issue with these principles of Virginia law. They argue, however, that CERCLA preempts Virginia law and modifies the date on which Virginia's statutes of limitations begin to run by applying a discovery rule, as set forth in 42 U.S.C. § 9658. Specifically, CERCLA's discovery rule provides that the commencement date for the running of a state statute of limitations is the date that "the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). The plaintiffs argue that because they did not discover the property damage that they alleged until late 2010 or early 2011, their lawsuits commenced in 2011 and 2013 were timely.

The district court rejected the plaintiffs' argument because the plaintiffs failed to allege facts giving rise to a CERCLA claim as required for CERCLA to preempt state statutes of limitations. The court explained that the Beatrice Mine lies approximately 1,000 to 2,000 feet below the surface of the plaintiffs' properties and that the plaintiffs conceded that they had never sought, nor had plans to seek, to use the mine voids. Moreover, the court observed that 9 to 13 percent of the water in the Beatrice Mine had seeped there naturally and was not the result of Consolidation Coal's pumping operation

---

[*] Under Virginia law, the plaintiffs have the benefit of the date they filed their actions in state court — 2011 and 2013 — since they dismissed those actions voluntarily and refiled their federal actions within six months of the voluntary dismissals. *See* Va. Code Ann. § 8.01-229(E)(3).

and therefore that it would not have been practicable even to consider using the mine voids. Thus, the court concluded that "the plaintiffs have not asserted a CERCLA cause of action, nor could they, because there is no evidence that they suffered any damages caused by hazardous substances." And without a CERCLA claim, the court reasoned, plaintiffs cannot take advantage of CERCLA preemption and its discovery rule, citing *First United Methodist Church*, 882 F.2d at 869.

We agree with the district court's conclusion. In an unusual manner, CERCLA uses preemption to modify state statutes of limitations with respect to *state causes of action* by imposing a federal discovery rule in some circumstances. It provides:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, *such period shall commence at the federally required commencement date* in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis added). And "federally required commencement date" is defined as

> the date the plaintiff *knew (or reasonably should have known)* that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

*Id.* § 9658(b)(4)(A) (emphasis added).

While the district court held, and the defendants maintain, that the preemptive force of § 9658 applies only if the defendants' conduct could give a plaintiff a CERCLA cause of action, the plaintiffs contend that § 9658 preempts even where CERCLA does

9

not itself provide a cause of action. We have, however, previously resolved this issue contrary to the plaintiffs' position, holding that the preemptive force of § 9658 applies only if CERCLA provides a cause of action to the plaintiff, whether or not asserted. *See First United Methodist Church*, 882 F.2d. at 869; *see also Barnes ex rel. Estate of Barnes v. Koppers, Inc.*, 534 F.3d 357, 365 (5th Cir. 2008) ("[W]e conclude that § 9658 operates only where the conditions for a CERCLA cleanup are satisfied").

In *First United Methodist Church*, the plaintiff contended that § 9658 preempted Maryland's statute of limitations for a state cause of action for the removal of asbestos found in a church ceiling. We rejected this contention, concluding that because CERCLA does not provide a cause of action for asbestos removal, § 9658's discovery rule was inapplicable. We explained that to preempt state statutes of limitations in this context would be "to stretch [CERCLA] far beyond its intended reach," observing that "Congress could not have intended for § 9658 to preempt state law in an area" outside of CERCLA's scope. *First United Methodist Church*, 882 F.2d at 867-69. We reasoned that "[t]o conclude otherwise would be contrary to the principles of comity which demand that in our federal system, state law not be preempted unless it is the clear and manifest purpose of Congress." *Id.* at 869 (internal quotation marks and citation omitted).

This principle is important. Were we to interpret § 9658 to preempt state law in a case involving harms for which CERCLA itself provides no remedy, we would not only be departing from the stated scope of CERCLA, we would be distorting the traditional relationship between state and federal law, which limits federal preemption to when

10

Congress has clearly provided for it. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (explaining that the presumption against preemption of state law causes of action rests on the fact that the States are "independent sovereigns in our federal system"). It is not surprising, therefore, that most of the other courts to have considered the preemptive force of § 9658 have drawn the same conclusion that we did in *First United Methodist Church*. *See, e.g.*, *Barnes*, 534 F.3d at 364; *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1436-37 (7th Cir. 1988); *Elec. Power Bd. Of Chattanooga v. Westinghouse Elec. Corp.*, 716 F. Supp. 1069, 1079-80 (E.D. Tenn. 1988), *aff'd*, 879 F.2d 1368 (6th Cir. 1989); *Angle v. Koppers, Inc.*, 42 So. 3d 1, 8 (Miss. 2010); *Greco v. United Techs. Corp.*, 890 A.2d 1269, 1286 (Conn. 2006).

The relevant question for applying § 9658 thus reduces to whether the facts of the plaintiffs' complaints give rise to claims that could be asserted under CERCLA. We conclude that they do not for at least two reasons: (1) Parties may not bring a CERCLA claim when they have not stated a basis for recovery of response and remediation costs with respect to a hazardous waste site; and (2) in any event, they may not bring a CERCLA claim for releases of hazardous substances that are federally permitted.

Addressing the first reason, we conclude that the plaintiffs have failed to allege facts suggesting a possible CERCLA claim and therefore that they are unable to assert that CERCLA preempts the limitations for state causes of action. While the plaintiffs allege, in various ways, that placing water in the voids left in the Beatrice Mine damaged their property interests by reducing the value of those interests, their allegations do not support any claim for the recovery of clean-up costs. In their complaints, they describe

11

how filling the mine voids with water reduced the value of their property and precluded them from further developing it. And in the same vein, they allege that the water from the Buchanan Mine obstructed their reasonable use of the mine's voids. The Graham and Ratliff plaintiffs allege further a possible loss of methane gas that may have remained in the Beatrice Mine, as the pumped-in water may have displaced the gas to portions of the mine not under their property. The plaintiffs also claim that Consolidation Coal was unjustly enriched by storing the water pumped from its Buchanan Mine without paying the plaintiffs for the storage space. But none of these alleged harms can form the basis of a CERCLA claim.

CERCLA was enacted in 1980 for the limited purpose "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 9607(a) (for contamination on private property, establishing liability only for the costs of cleaning up hazardous waste sites and for health assessment). Not only have the plaintiffs conceded that they have not "incurred any cleanup costs," but the facts they have alleged would not allow the district court to conclude that their claims include or could include costs to clean up a hazardous waste site. Instead, they only seek trespass-type damages for aqueous interference with their interests and unjust enrichment damages for the storage of water. Such a suit is far removed from the concerns motivating CERCLA and therefore cannot support a claim for CERCLA preemption.

12

Because § 9658 "operates only where the conditions for a CERCLA cleanup are satisfied," *Barnes*, 534 F.3d at 365, and the plaintiffs' claims are state-law claims for damages that "stretch far beyond [CERCLA's] intended reach," *First United Methodist Church*, 882 F.2d at 867, § 9658 does not preempt Virginia's statutes of limitations to give the plaintiffs the benefit of the CERCLA discovery rule.

Addressing the second reason that also precludes CERCLA preemption, the only releases underlying the plaintiffs' claims are the transfers of water from the Buchanan Mine to the Beatrice Mine. Those transfers, however, were permitted by a revision in March 1994 to Consolidation Coal's existing mining permit, and therefore those transfers cannot be the basis of a CERCLA claim. *See* 42 U.S.C. § 9607(j) (excluding CERCLA liability for any "federally permitted release").

Before it began its dewatering operation, Consolidation Coal applied for a revision to its mining permit "to dewater the North Gob seal area of the Buchanan No. 1 Mine by pumping from a dewatering bore hole and discharging the water in a Beatrice Mine borehole." And the approved public notice alerted the public to a "Revision [to mining Permit No. 1400047] to Establish a New Mine Dewatering Pump System for Coal Surface Mining/NPDES Permit under Chapter 19, Title 45.1 Code of Virginia." Finally, in its letter of March 7, 1994, the Virginia's Department of Mines, Minerals and Energy approved the permit revision, stating, "Your operation under Permanent Program Permit Number 1400047 has been revised as requested."

While the permit revision under which Consolidation Coal transferred the water from its mine to the Beatrice Mine was issued by the Virginia Department of Mines,

13

Minerals and Energy, the permit nonetheless served as a federally authorized permit under federal law. The Clean Water Act allows the EPA to enable state agencies to issue National Pollutant Discharge Elimination System ("NPDES") permits, which authorize the discharge of pollutants. 33 U.S.C. § 1342(b). And the Virginia Department of Mines, Minerals and Energy is specifically designated to issue these permits and did so in this case. 9 Va. Admin. Code 25-31-940.

Because Consolidation Coal's water transfer was permitted by a state agency that had been delegated authority by federal law, it amounted to a federally permitted transfer and could not serve as a basis for a cause of action under CERCLA. *See* 42 U.S.C. § 9607(j).

III

Even were the plaintiffs to have the benefit of § 9658's discovery rule, they still could not satisfy the applicable statutes of limitations. Section 9658 provides that the "commencement date" when statutes of limitations begin to run is "the date the plaintiff knew *(or reasonably should have known)* that the . . . property damages . . . were caused." 42 U.S.C. § 9658(b)(4)(A) (emphasis added). We conclude, based on the extensive record of publicity about Consolidation Coal's activities in this case, that the plaintiffs reasonably should have known of their damages more than five years before they commenced their actions in 2011 and 2013.

As required by law, Consolidation Coal published notice of its application for a revision of its mining permit to allow the dewatering of its Buchanan Mine in the

14

*Richlands News-Press* for four consecutive weeks, beginning November 4, 1993. The notice provided:

> Consolidation Coal Company . . . is applying to the Virginia Division of Mined Land Reclamation for Revision to Permit No. 1400047 in order to establish a dewatering pump system for the Buchanan Mine.
>
> *       *       *
>
> A copy of the application materials will be available for inspection and public comment at the <u>Buchanan County Courthouse</u>. Any person whose interests are or may be adversely affected by the proposed change . . . may within 30 days of the (date of 4th publication) submit written comments or objections concerning the proposed change.

The application itself was filed in the Buchanan County Courthouse, and it remained there for public view from November 1, 1993, through January 20, 1994. The application, which gave further detail of the proposed operation, stated that Consolidation Coal was seeking a revision to its permit for the "transfer of mine water from the Buchanan Mine to the Beatrice Mine via overland pipe" and included detailed descriptions of the location and a map. The Virginia Department of Mines, Minerals and Energy specifically determined that Consolidation Coal's publications satisfied all applicable requirements.

Moreover, following issuance of the permit revision in March 1994, Consolidation Coal began openly constructing a pipeline above ground for the transfer.

In addition to Consolidation Coal's publication of the notice and the permit application and its open implementation of the dewatering operation, its dewatering operation was discussed in numerous local newspaper articles reporting generally on Consolidation Coal's mining activities, the opposition to them, and the resolutions

15

against them adopted by public bodies. Specifically, articles discussing the dewatering operation were published in *The Virginia Mountaineer* in Buchanan County on November 17, 2005; December 8, 2005; December 15, 2005; January 19, 2006; June 1, 2006; and October 5, 2006, and in another newspaper, *The Voice*, on January 27, 2006.

While the plaintiffs concede that Consolidation Coal's dewatering activities were knowable, they assert that they did not view the public notices and did not subscribe to the relevant newspapers. They suggest that their "states of mind are decisive" in determining when CERCLA's commencement date for statutes of limitations were triggered. This argument, however, reflects a misunderstanding of the discovery rule set forth in § 9658. That provision makes clear that the clock begins to run not only when plaintiffs actually knew of the dewatering activities but also when plaintiffs *reasonably should have known* of them.

We conclude that the level of public notice and publicity that occurred with respect to Consolidation Coal's dewatering activities should reasonably have informed the plaintiffs of those activities more than five years before the plaintiffs commenced their lawsuits. Thus, even under the discovery rule in § 9658, the plaintiffs' claims would be barred by Virginia's statutes of limitations.

IV

Finally, the plaintiffs argue that the statutes of limitations should be tolled under Virginia law because Consolidation Coal concealed its dewatering activities. They claim that the defendants "intended to secretly dispose of their contaminated wastewater into

16

the [plaintiffs'] underground mine void such that the Plaintiffs were deprived of any knowledge or means to know of the Defendants' wrongdoings."

To be sure, Virginia law provides for tolling in "extraordinary circumstances" such as when "fraud prevents a plaintiff from asserting its claims" or when the defendant takes an affirmative act that deprives the plaintiff of the ability to assert the cause of action in the appropriate time. *Birchwood-Manassas Assocs., LLC v. Birchwood at Oak Knoll Farm, LLC*, 773 S.E.2d 162, 164 (Va. 2015); *see also* Va. Code Ann. § 8.01-229(D). But in light of the record in this case, the plaintiffs' argument for invoking tolling on this basis borders on the frivolous. Consolidation Coal openly and publicly sought permission for its dewatering operations and published notice of its activities as required by law. It also openly constructed the dewatering pipeline over land and into Island Creek Coal's mine. Such conduct is hardly consistent with an intent "to secretly dispose of their contaminated wastewater" in order to deprive the plaintiffs of knowledge about their activities.

V

Apart from their challenge to the district court's limitations rulings, the plaintiffs challenge the court's denial of their request for injunctive relief. Because, however, the causes of action that provide the basis for any claimed relief are barred, the plaintiffs' request for injunctive relief is also barred. Injunctive relief is a remedy, not a cause of action.

\* \* \*

17

For the foregoing reasons, the judgments of the district court are

*AFFIRMED.*